Judge Green
delivered the opinion of the Court.
The object of this suit was to injoin three, judgments recovered by Baker'for the use of the Farmers’ Bank, against the plaintiff and Lane. These judgments were entered as confessed by those defendants, and were so entered by some mistake; Vanmeter never having employed counsel, or authorised the confession of judgments.
There are several grounds for relief asserted- by the appellee. The first is, that such judgments could not have been had, or if had, would have been erroneous and reversible, if they had not been entered as by confession; the actions being joint against the drawer and endorsers of an inland bill of exchange, not upon'its face negotiable at any of the chartered Banks of Virginia. This objection to the form of the actions, and the fact that the judgments would have been erroneous and reversible, if they had not been entered by mistake, as confessed, can have no weight in a Court of Equity. There the rule is, that whosoever asks equity must do it, as a condition of relief; and a judgment at law, however obtained, no matter by what fraud, accident or surprise, is allowed to stand as a security for what Is justly due, whether that be a part or the whole of the debt recovered. The enquiry in a Court of Equity is ne *556 ver, whether the judgment is erroneous or unduly obtained; but whether it be for a debt justly due or not. If Vanmeter was responsible for these debts, in actions brought against him individually, he cannot complain in a Court of Equity, that he is injured by judgments rendered against him jointly with another.
The next objection taken to these judgments, is on the merits. The plaintiff alleges that the three endorsers, himself, Marshall and Triplett, were joint sureties, by virtue of their endorsement of the bills drawn by Lane, and discounted at the Bank for Lane’s accommodation: that each was bound to bear a due proportion of the loss, Lane being insolvent; and that the Bank, who is not charged with notice of that fact, had colluded with Marshall to throw the whole burthen upon him, by dismissing the suit as to Marshall, upon his agreeing to hold himself bound for the debts, and to pay them immediately, if Lane and Van-meter should be unable to pay.
If all this were true, and the endorsers were mutually bound to each other for contribution, and the officers of the Bank had full knowledge of the facts, they would have been guilty of no fraud or wrong to the plaintiff, by making such an arrangement with Marshall, and carrying -it into effect. The drawer and endorsers were severally liable to the Bank for the whole amount of the bills in solido. The Bank had a right to pursue any one or more, or all, in several actions; and to have coerced the payment of the whole from either of them. The legal or equitable rights of securities to contribution among themselves, can never affect the rights of the creditor, or bind him to proceed against each for his proportion of the debt: unless, indeed, where the obligations of the parties are in the form of a joint contract, in which case, all must be sued together, but either may be compelled by execution to pay the whole.
The remaining objection is also on the merits.
The bills were presented before they were due, and the drawee refused to accept; and Vanmeter alleges that n© *557 notice was given to him, he being the first-endorser, either of the non-acceptance, or non-payment. This is probably true, and in the present stage of the cause, must be taken to be so. If he was entitled to notice, he was not liable to the claim of the Bank, and would be entitled to relief; for, he was precluded from making this defence at law, by the mistaken entry of judgments by confession.
The facts, upon which the question, whether Vanmeter was or was not entitled to notice, are stated by himself in his bill. He says, that the bills were drawn and endorsed for the accommodation of Lane, the drawer; and for the purpose of getting them discounted at the Bank: that no consideration, whatever, passed between the parties, or any of them; and that there was no expectation that they would be paid by the drawee.
It is a general rule, that the drawer or endorser of a bill of exchange, is discharged from responsibility, unless' he has due notice of the dishonor of the bill, by non-acceptance or non-payment. This notice was required originally, for the purpose of enabling the party to take promptly such measures for his security, as might be in his power; and it seems to have been originally required of him, if he complained of the want of notice, to prove, that for the want of it, he had suffered some injury. The modem doctrine, however, is perfectly well settled, that the law implies an injury, from a want of due notice; and this presumption is so strong, that in order to repel it, proof is required to shew that it was impossible for the party to suffer any damage or inconvenience. Thus, in the case of a drawer; if the bill be drawn without funds in the hands of the drawee, and the drawer had no reason to expect that the bill would be accepted; this is considered as a case in which it is shewn that no possible prejudice can result to the drawer from the want of notice; since he knew, when he drew the bill, that it would devolve on him to take it up, as well without as with notice of its dishonor; and having no reason to expect the bill to be accepted, it cannot be *558 supposed that he would make any arrangements for putting funds in the hands" of the drawee to take it up. But, if the drawer, without funds in the bands of the drawee, has any just ground to believe that the bill will be accepted, pe 0Ught to have notice; for in that case, it is to be presumed that he will so arrange his funds as to place the means of paying the bill at maturity, in the hands of the drawee. Such arrangements, if unnecessary and fruitless, would bp prejudicial to the party; and to enable him to avoid this mischief, immediate notice should be given.
The case of an endorser is still stronger than that of a drawer; for he has, in general, a right to resort to the drawer for indemnity, and to enable him to assert this right with the greatest possible effect, he ought to have immediate notice. But, even as to an endorser, a case may occur, in which it may be shewn to be impossible for him" to suffer any inconvenience for the want of notice. As in the case of a note endorsed by the payee for the accommodation of the drawer, who should place in the hands of the endorser funds sufficient to discharge it. The latter would not be entitled to notice of the non-payment; because he could not possibly suffer any damage by the failure to give him-notice, Carnay v. Da Costa, 1 Esp. Rep. 303; since the only purpose of a notice, would be, to inform him of the necessity of resorting to the drawer for indemnity, which, in this case, is unnecessary, as he already has that indemnity in his hands.
With the exception of the cases, in which it can be shewn, that they could not, by possibility, suffer an injury by the failure to give them notice, the drawer and endorser have in all cases a right to strict notice, unless they waive that i’ight, or forfeit it by their own fraud. I do not find this ground of fraud, very distinctly laid down as a reason for dispensing with the necessity of notice. But, there are many cases in which it appears to have been the sole ground of the judgment, and in which, the principle is distinctly alluded to.
*559 in De Bert v. Atkinson, 2 H. Black. Rep. 336, the endorser of a note for the accommodation of the drawer, who knew that he was insolvent, was held not to be entilied to notice of non-payment. If this case proceeded upon the supposition, that the knowledge of the drawer’s insolvency made it impossible that the endorser could suffer any injury for the want of notice, then it contradicted many other cases, in which it has been determined, that the insolvency of the acceptor, whether he accepted for the accommodation of the drawer or of himself, did not dispense with the necessity of notice'; for, it is not impossible to procure payment from an insolvent man, through his friends or otherwise; and the drawer is entitled to notice, in order to enable him to take this chance. The drawer of the note in this case, was in the situation of an acceptor, for his own accommodation; and the endorser, in the situation of the drawer of the bill so accepted. If it was decided upon the ground of fraud, the decision was equally objectionable; for, no fraud or imposition was practised on the holder, since he got the security of the very names, which he expected to get when he contracted. This case has been virtually over-ruled in French’s ex’r. v. Bank of Columbia, 4 Cranch, 161. I mention it only to shew, that Lord Ellenlorough considered it as decided on the ground of fraud; and upon the authority of that case, decided Sisson v. Thomlinson, Selw. N. P. 324, n. 31; in which he ruled, that when an endorser had not given any consideration for a bill, and knew at the time that the drawer had not any effects in the hands of the drawee, he was not entitled to notice of non-payment. In this ease, the decision could not have been founded upon the principle that the endorser could not suffer any detriment for want of notice, since it was a bill accepted; and although none of the parties had given any value, and it was to all the parties an accommodation bill; yet the endorser had a right, if he paid it, to resort to the acceptor; a right, which might have been rendered of no avail, for *560 the want of timely notice of non-payment. The only ground, upon which this case was decided, was, the fraud upon the public, practised by the endorser, by endorsing a bill which he knew to be drawn without funds. This case was totally different from that of an insolvent’s note, endorsed for his accommodation; the holder of which got all he contracted for. Every drawer of a bill, virtually represents to all dealing for it, that it is drawn upon sufficient funds. The holder deals upon the faith that he shall have the additional security of the drawer; and if he fails in this, he is disappointed by the fraud of the drawer; and if the endorser, with a knowledge of the facts, endorsed for the purpose of promoting the object of the drawer, he would be a participator in the fraud. If, therefore, in Sis-son v. Thomlinson, the bill had not been accepted, there would have been better reason to hold, that the endorser was not entitled to notice; for, that would have corroborated the presumption, that the endorser knew that the bill was not only not drawn upon funds; but also, that it would not be accepted. So that the holder would be disappointed in the expectations raised by the fraudulent misrepresentations of the drawer and endorser. Neither would the endorser, in that case, have any acceptor to resort to; nor could he claim against any one but the drawer. If he knew that the bill would not be accepted, then he knew the necessity of looking to the drawer from the moment he endorsed; and therefore, wanted no notice to put him on his guard. The bill, however, being accepted, the holder got all he contracted for; and the fact of acceptance indicated, that although the endorser knew that the drawee had no funds of the drawer, he had reason to expect an acceptance, and would be entitled to notice. In such a case, the holder can hardly be said to be deceived or defrauded. The actual decision of this ease cannot be supported, but upon the ground, that if the endorser acted in the beginning with an intent to deceive others, he cannot insist upon notice, even if no one be deceived.
*561 In Brown & al. v. Massey, 15 East. 216, it was held, that when a bill was drawn, accepted and endorsed by several, for the accommodation of the last endorser, and the acceptor had no effects of theHlrawer in his hands, but that fact was unknown to one of the endorsers, who was the defendant, he was entitled to notice of the non-payment, having a right to resort to the last endorser for indemnity. This case seems to turn upon the bona fides of the endorser. If he had known the fact that there were no funds in the hands of the drawee, he would probably have been considered as having participated in the fraud of putting a bill purely for accommodation, into circulation.
In Leach v. Hewitt, 4 Taunt. 731, the defendant had endorsed a bill for the accommodation of a third person, whose name was noton it. The bill purported to be drawn by one.firm, which had no existence, and accepted by another fictitious firm; but this was unknown to the endorser. The instruction of Mansfield, Justice, to the jury, after-wards approved of by the Court, was, that the endorser was entitled to notice, if he was not privy to the fraud. If the endorser in that case, had been privy to the fraud, he would not have been entitled to notice. Not being-privy, he was entitled to claim against the person, for whose accommodation he had endorsed; and the want of notice might have impaired his remedy.
These cases are referred to, for the purpose of shewing that an endorser, who unites with the drawer to deceive the holder, by representing a bill as one that will probably be accepted, with a knowledge that it will not, is guilty of a fraud, which deprives, him of the right to insist upon notice. The principle, although perhaps pushed too far in its practical application in some of those cases, is just. If a bill were drawn upon a fictitious person, and was endorsed with a full knowledge of that fact, for the purpose of enabling the drawer to raise money by getting it. discounted, it could not for a moment be doubted, that the holder could recover against the endorser, without giving him no *562 tice that he applied at the place to which the bill was di- and found no person to present it to, answering the description of the bill. This would be a gross and palpable fraud, in both drawer and endorser. I can perceive no difference between that case, and one in which the bill was drawn and endorsed, with fqll knowledge on the part of the endorser, that the drawer not only had no funds in the hands of the drawee, but that he had no right to draw upon him, or reason to expect that he would accept; except that in one case, the non-existence of the nominal drawee .would be complete proof of the fact, that there was no expectation, or ground for expectation, that the bill would be accepted; and in the other, it might be fairly inferred, in the absence of proof, to the contrary, that the endorser, from the representations of the drawer or otherwise, did bona fide expect that the bill would be accepted; an inference which it might be difficult, and almost impossible, to disprove.
But, the case-under consideration, is precisely the case last supposed, and the proof is full. Vanmeter, in his bill sworn tomates that the bills were drawn and endorsed for the accommodation of the maker, for the purpose of procuring a discount at the Bank; and that there was no expectation that they would be paid by the drawee; and the answer of the Bank, sworn to by the Cashier, states, that if the facts so stated by plaintiff, had been known to .them, they would not have discounted these bills. I think this was a fraud upon the Bank, and that Vanmeter was therefore entitled to no notice.
It is not necessary to enquire whether, if Vanmeter would have had a right to claim contribution from the other endorsers, -if they had had due notice of the non-acceptance or non-payment, he was therefore entitled to notice, jn order that he might give them notice, and so secure his recourse against them. For, he had no right to claim contribution from them. There was no agreement amongst them, that each should bear a part of the loss as joint sure *563 ties, either expressed or to be implied from the cireumstances of the case, but the contrary. Each of the endorsers defendants, deny that there was any such agreement, and say, that' although they endorsed for the accommodation of Lane, they did so under the full persuasion that the bill would be accepted and paid. I at one time doubted, whether several endorsing for the accommodation of another, ought not to be considered as joint sureties, and bound to contribution amongst themselves. But, I am satisfied, that this cannot be the effect of such a transaction, unless.there be a stipulation to that effect. Sureties may bind themselves severally in succession; so that each may be a supplemental surety, in respect to another. Craythorne v. Swinburne, 14 Ves. 160. In this case, they have bound themselves by an instrument, the legal effect of which is to subject them, in respect to each other, in succession in the order in which they endorsed; and'they must be taken to have intended to be bound according to the legal effect of the instrument, until the contrary appears. If several endorsers, in such circumstances, were liable to contribution as a matter of course, the books would have teemed with cases on the subject. But, I cannot find that the question has ever been raised.
The oi’der refusing to dissolve the injunction upon the merits, must be reversed, and the injunction dissolved.