Lee, J.
In 1 Coote on Mortgages, p. 332, the general doctrine is stated, that a mortgagor in possession is not bound to account for rents and profits to the mortgagee. He refers to the case of Colman v. The Duke of St. Albans, 3 Ves. R. 25. That case simply establishes that where the debt is due, and the mortgagee does no act to appropriate the rents to his debt, but permits the mortgagor to remain in possession, and to receive the rents and apply them as he thinks proper, he cannot call the mortgagor to account for what he may so have received. But it is undoubtedly true, that the mortgage subject and all its profits are or may be rendered liable for the debt secured by the mortgage. 1 Coote on Mortg. 325. Whilst the •mortgagor remains in possession of the estate, he holds it by a frail and precarious tenure, which, in Beverley v. Brooke, 4 Gratt. 187, 209, was compared to that of a tenant at will; and like such a tenancy, it may be determined by any manifestation of the will of either party. Slight aets will be deemed sufficient to manifest that intention; and the right of a mortgagor to take the profits without account depending upon the will of the mortgagee, ceases whenever a manifestation of the mortgagee’s intention to determine it is made. In the case of a formal lease, the mortgagee may entitle himself to receive the rents by notice to the tenant, and all the profits not theretofore received by the mortgagor will be held to be appropriated by the mortgage debt. Drummond v. The Duke of St. Albans, 5 Ves. R. 433; Pope v. Biggs, 17 Eng. C. L. *29 R. 368. Now, it seems to me that Hupp can stand on no better footing than the mortgagor himself, or a tenant under him, and that his possession must be garded as subject to the same rules and principles which will apply to theirs. If the prior mortgagee hold the legal title, he may treat a party in possession under the mortgagor as a trespasser, and after a recovery in ejectment, may hold him liable for rents and profits. But as he may thus secure them by a proceeding at law, a court of equity will not give relief as to rents and profits whieh he may permit the party in possession to receive and dispose of without resorting to his legal remedy: So that he cannot come into equity to have a receiver appointed. But the case of a second mortgagee, who has not the legal title, is different. If the first mortgagee be not in possession, he may have a receiver appointed, though of course without prejudice to the right of the first mortgagee to take possession, if he will. Coote on Mortg. 596; 2 Spence’s Eq. 689; Berney v. Sewell, 1 Jac. & Walk. 627; Archdeacon v. Bowes, 3 Anst. R. 752. In this case, Crawford and Williams, the trustees in the deed of trust for the benefit of John Arthur’s heirs, holding the legal title, could have entered upon Hupp or brought ejectment. They could not, therefore, have a receiver appointed on their motion: but Steenbergen, standing as second mortgagee without the legal title, was entitled to the appointment of a receiver by the court of chanceryand thus to secure the rents and profits for his mortgage debt.
And as the equitable mortgagee is entitled to the rents and profits from the time of the appointment of a receiver, he is also so entitled from the time of his doing any act which shall be equivalent to an application for such appointment; and an order of sale in a suit to foreclose the mortgage is such an act. Ex parte Living, 38 Eng. C. L. R. 343. Again: A notice to a *30 first mortgagee in possession, by the second mortgagee, no^ pay over the rents to the mortgagor, will be to the application for a receiver; because ^ the first mortgagee, after such notice, continue to pay over the rents to the mortgagor, he will be held answerable for them. Berney v. Sewell, 1 Jac. & Walk. 627; 2 Spence’s Eq. 648. So after a bill filed by a second mortgagee, the first mortgagee in possession cannot pay over the rents to the mortgagor without making himself liable to account. Parker v. Calcraft, 6 Madd. R. 11. So if in a case in which the mortgagee is no party, a receiver have been appointed, he comes forward and moves to discharge the receiver, from the time of such discharge he will be entitled to the rents and profits. Thomas v. Brigstocke, 3 Cond. Eng. Ch. R. 570. Now, there can be no special virtue in the particular act which shall evince the mortgagee’s determination to put an end to the possession held under the mortgagor, and to appropriate the whole subject, out and out, from that time to the payment of his debt. Any act, conforming to the nature of the case, which shall sufficiently fulfill the condition of plainly manifesting such purpose, and repel the presumption of consent to the mortgagor’s possession, ought to be sufficient to found the right to have the accessory as well as the principal subject, so far as necessary, appropriated to his benefit from that time; and it seems to me, that what was done by the bank in this case should be deemed a sufficient foundation for the right to claim the rents and profits of the property that accrued after the injunction, in the actual result of the whole case. The bank determined to resort to a sale of the property, and directed the trustee to proceed to make it; and it gave notice of its claim and of such its intention to appropriate the whole subject to the purposes of its debt, by causing the sale to be advertised; and. it formally and distinctly made claim *31 and set up its title in the suit of Hupp and Arthur. Of the right of a junior mortgagee to foreclose the equity of redemption, and in the case of a deed of trust, to sell, no doubt can be entertained. The case of Howell v. Ripley, 10 Paige’s R. 43, cited by the appellee’s counsel for another purpose, is an authority for this proposition: though where the junior incumbrancer is about to sell, and the amount of previous liens is unascertained, the court of equity, rather ex gratia or as a matter of favor to the mortgagor, will stay a sale till it be ascertained. Thus, the bank, in ignorance for aught that appears, of any previous unsatisfied debt, was proceeding to take the appropriate means to reduce the subject to possession, by causing a sale to be made, when it was arrested by the injunction of Hupp and Arthur setting up a title adversary to that under which the bank claimed, alleging that the deed to Steenbergen was usurious, and seeking to avoid the whole security. It did not seek merely partial or equitable relief, but to get rid entirely of the deed under which the bank claimed. It is true there are certain allegations in the bill, upon the ground of which partial equitable relief might be administered; but it would seem that they are made rather as ancillary circumstances, with a view to aid in making out the case of usury, than for the simple purpose of reducing the amount due, and obtaining relief in part. Manifestly, the whole frame of the bill is to displace the Steenbergen debt entirely, and to let Hupp in. Now, as Hupp was thus seeking to delay the sale of the property, whereby a deficiency might be occasioned, (as it in fact has been in the result,) it could not be unreasonable for the court, on granting the injunction, to impose such terms as might fully protect the bank against loss or injury. Rogers v. Rathbun, 1 John. Ch. R. 367; Tupper v. Powell, Ibid. 439; both cases of usury, in which the court held that *32 the party seeking relief must do what is just and right on his part. He that seeks equity must do equity; and it could not be unjust to require Hupp and Arthur seeking relief in the manner they were, to submit to such terms as would insure the bank against the loss of any part of the amount that might eventually be found actually due, by reason of the delay thereby occasioned. 2 Tuck. Comm. 468; Marker v. Marker, 4 Eng. Law & Eq. R. 95, 106. In the case of an injunction to a judgment at law, the statute provides for adequate bond and security; and in other cases, it is the right and duty of the court to require that sufficient security should be given. If the bill of Hupp and Arthur had stated the case as it really was, admitting what was really and justly due, the court would have taken some steps to secure that amount to the bank, and to prevent any portion of it from being lost by reason of its interference. This court has adjudged in this case, that Arthur and Hupp were not entitled to the relief they sought, but to equitable relief only, and upon equitable terms. It has directed the amount, justly due from Arthur to Steenbergen, to be ascertained by a proper proceeding. That has been done by a commissioner, and a report made, to which no exception was taken, and which was confirmed by the court. Thus, the amount for which the deed of trust stands as a security, has been fixed and ascertained; and the court has also, by its decree, established the right to raise that amount by a sale of the property. The property has accordingly been sold; and the proceeds of the sale have proved inadequate to satisfy the amount thus declared due. Now, it may not be unreasonable to infer that this deficiency was occasioned, in whole or in part, by the interference which caused the delay of the sale. Certainly, if the property had been sold in April 1841, (the period proposed,) and the- proceeds then applied to the debt, the *33 large accumulation of interest which took place between that period and the time of the sale, would have been avoided, or at least so much of it as upon that portion of the debt that would have been covered by the proceeds of the sale.
Where a party is proceeding at law to get a judgment for more than is due, and the defendant appeals to the court of chancery for relief by way of injunction, the settled rule is, that it will only be granted on terms of confessing a judgment and executing a release of errors at law. And a judgment is always suffered to stand as a security for what may be really due, though obtained by fraud, accident or surprise, and although what may be due be the whole or a part only of the debt recovered. Farmers Bank v. Vanmeter, 4 Rand. 553, Judge Green’s opinion. So where there is a recovery at law, and the defendant seeks relief in equity in the nature of a new trial, the judgment at law stands as a security for what the plaintiff' may be justly entitled to, and the court of chancery continues the injunction and directs the proper issues; and upon the coming in of the verdict, perpetuates the injunction or dissolves it, in whole or in part, according to the finding of the jury. Knifong v. Hendricks, 2 Gratt. 212. These principles seem all to be in strict conformity to that favorite maxim of the court of equity, that he that seeks equity must do equity; and should be adhered to, however the manner of their application may be varied in different cases.
When, therefore, Arthur and Hupp applied for their injunction, due cai’e should have been taken to protect the bank against any loss by reason of its being allowed, and to preserve entire the full benefit of the security which it then had. Hupp, it seems to me, should have been required to pay the rents into court or to surrender the property to the officer of the court, to be by him rented out, and the proceeds to be *34 accounted for and paid as the court might direct; or Parti©s should have been required to give adequate to indemnify the bank against the loss of any portion of what should be really due, if any were thereby occasioned. Marker v. Marker, 4 Eng. Law and Eq. R. 95, 106; Pulteney v. Warren, 6 Ves. R. 73; Bond v. Hopkins, 1 Scho. & Lef. 413; O’Donel v. Browne, 1 Ball & Beat. 263. It could be no hardship or injustice to Hupp to require the rents to be brought into court, because if they should prove to be required to make up the amount justly due the bank, they should be so applied. If not, they could be paid over to Hupp, together with the balance of the proceeds of the sale of the property, if any there proved to be.
It is no answer to this view of the course that should have been adopted, to say that the parties looked to the sufficiency of the subject to pay the debt, and that no suggestion was made to the court that its sufficiency was questionable; because it would have been right for the eourt to protect the party against the possibility of loss in this way, by imposing suitable terms or granting the injunction; and that the court did not do what it might or would have done, if such a suggestion had been made, can furnish no good reason why it should not repair the mischief so far as it may be in its power. If it was the right of the bank that the means should have been provided by the court of putting it in the same condition as to the whole or any part of the debt that should prove to be just, as if it had not interfered,, then its failure to remind the court of its omission or to call upon it to take measures to secure the rents and profits, (in confidence possibly that Hupp was a solvent and responsible man, and a willingness to rely on his personal ability to answer them,) cannot and ought not to impair such right thus existing at the very time the injunction was granted.
*35 But the court has required no such security from Hupp. It has taken no measures to have the rents brought into court; but has upon the' bill of and Hupp, assailing and seeking to set aside the whole debt claimed under the deed of trust to Steenbergen, prevented the bank from availing itself of its security for any amount whatever, and has made no provision to protect the bank against the loss of a portion of the amount justly due in consequence of the delay, by reason of the depreciation in the value of the property, the accumulation of interest or otherwise. It has suffered Hupp to remain in possession contrary to the will and intention of the bank, and to receive the rents and profits during the pendency of the injunction, and put them in his pockets, while the trust creditor during the same time is kept out of his money without any indemnity. Is there then no remedy for this wrong ? Is this a case of damnum absque injuria ? Shall Hupp, the junior incumbrancer, thus be permitted to appropriate á large sum issuing out of the trust subject to the prejudice of the prior incumbrancer, and that after the latter had made the proper effort in the appropriate way to avail himself of the trust subject, but was prevented, and his hands tied by the act of Hupp ? And shall the prior incumbrancer thus be made to lose so much of the amount justly due him ? I do not see how this can be made to conform to justice or the established principles and maxims of the court of equity. Hupp having sought and obtained the aid of a court of equity, should be held and taken to submit to everything that equity and good conscience required, and upon that principle to do what is right and just. It was but right and just that the bank, being the prior incumbrancer, under the circumstances of this case, and after its ineffectual effort, (rendered so by the act of Hupp,) to appropriate the subject, should have the benefit of the whole subject, at least *36 from and after that period, in preference to Hupp, the junior incumbrancer. I am of opinion that it is a case eminently proper for the application of the principles, if not the precise form, of the case of Pulteney v. Warren, 6 Ves. R. 73. In that case, the doctrine is broadly avowed that it is the duty of the court to relieve a party, as far as it can, from the injustice to which the shortness of its proceedings may have exposed him. It is said there to be a principle on which courts of justice should act without scruple, to relieve parties against the injustice that may be occasioned by its own acts or oversights, at the instance of the party against whom the relief is sought. The doctrine of this case is recognized as unquestionable by Lord Redesdale, in Bond v. Hopkins, 1 Sch. & Lef. 413; and by Lord Cotterham, in Sanxter v. Foster, 1 Cr. & Phil. 302, 18 Eng. Ch. R. 302. It is in effect recognized or acted upon in various other cases. Anonymous, 2 Ch. Cas. 217; Ross v. Reid, 8 Gratt. 229; Elliot v. Davis, Bunb. R. 23; Morgan v. Morgan, 2 Dick. R. 643; Grant v. Grant, 3 Cond. Eng. Ch. R. 533; O’Donel v. Browne, 1 Ball & Beat. 263. It is also recognized in 1 Story’s Eq. § 514, p. 578; and it was distinctly acted upon in the case of Ashby v. Kiger, Gilmer 153. In that case the chancellor, on granting an injunction to a judgment at law, omitted to require a release of errors. It was held that the party should not be permitted to take advantage of the omission.
It is in vain to say that this doctrine only applies in cases in which the injunction has been wholly dissolved ; and that in this case the injunction never was dissolved. This is a matter which in this court and in a case like the present, goes more to form than to substance. The principle is not to protect the party against damage or loss only where the plaintiff in the injunction wholly fails in his case, but also in cases in which he succeeds in part. In the case of White v. *37 Clay, 7 Leigh 68, which was an action at law upon an injunction bond, it was expressly decided that the condition of such a bond applies to the case of a as well as of a total dissolution of the injunction. And although no formal order of dissolution was entered in this case, the injunction was practically and in effect dissolved as to so much of the debt as was found to be justly due, and a sale directed to be made to raise the same. And, however it might be if this were an action on an injunction bond at law, in which a dissolution in form as well as in effect might perhaps be necessary to be averred, yet in this court and in this case such a mere matter of form would scarcely be permitted to defeat the justice of the case. And the Circuit court might readily have avoided any difficulty on this score by dissolving the injunction in form as to the amount really due. Nor can I perceive the force of the objection to this course, that it might expose the party to the peril of a sale under a deed tainted with usury. The sale under the decree was still founded on the same deed; and if it had been made by permission of the court, instead of its order, in dissolving the injunction after the subject matter had been thus fully and finally adjudicated, I apprehend the court would have found little difficulty in preventing the controversy from being revived, and fully quieting the title.
The counsel for the appellees strenuously insists that the loss of the bank was occasioned by its own default ; that it was its duty, if it desired to secure the rents and profits to be applied if necessary to its debt, to move for the appointment of a receiver in Hupp’s injunction case ; and having failed to do so, it cannot now be heard to set up a claim to such as were received by Hupp pending the cause. I do not regard this as a satisfactory answer to the claim of the bank. In the first place, I think it a matter admitting of se *38 rious question whether under the rules and principles governing the appointment of receivers in chancery, a motion would have been allowed. The bill ^7 Hupp and Arthur, as has been stated, assailed the debt claimed by the bank as usurious and utterly and absolutely void; it sought to get rid of it entirely, alleged their ability to prove the usury at law, and asked for a day in court for that purpose. It did not pray general relief, but special relief against the whole debt. It utterly denied any right whatever, legal or equitable, in the bank to set up the debt or charge the land with its payment. There are, it is true, certain allegations in the bill tending to show a failure on the part of Steenbergen to perform the agreement, and a failure in part of the consideration of the debt secured by the deed of trust; but those allegations seem rather to be subservient to the main object of overthrowing the deed of trust entirely, than to furnish themselves a ground for equitable relief. Now, to say nothing of the rule of practice stated by Judge Baldwin, in Beverly v. Brooke, 4 Graft. 187, 214, that an application for a receiver comes regularly only from a party plaintiff, although where a party has a clear equitable title, the court will appoint a receiver as against others claiming equitable interests, without prejudice to those having prior legal estates, (3 Daniel Chy. Pract. 1950, et seq,) yet where all right, both legal and equitable, in a party is denied, the power of the court to appoint a receiver, which is entirely discretionary, will not be exercised at his instance until he shall first clearly show his right in evidence, unless there appear to be positive danger of spoliation to the fund. 3 Daniel Ch. Pr. 1950, 1956, 1962; 2 Story’s Eq. Ju. § 836, 837. If Hupp and Arthur had filed such a bill as only they could maintain, if they had stated the case as it really was, had not contested the whole claim of the bank, but admitted its right to a part of the debt *39 claimed, contesting only the amount due, undoubtedly a receiver might have been appointed on motion of the bank. They did not adopt that course: they that Hupp, though the third incumbrancer in point of time, was next to John Arthur’s heirs in point of right; that he was entitled to displace the bank, and was in the actual possession of the trust subject, as he rightfully might be as against the bank. Thus, the right of the bank was contested out and out; and in the state of the adjudications on the subject at that time, might have been regarded as of the greatest doubtfulness; and the court might have denied the motion for a receiver in such a case until the final decision of the cause; because not until such final decision should be made could the right of the bank be made to appear. There was no suggestion of any danger to the fund, or that Hupp was in insolvent or doubtful circumstances: and it may be inferred that no such suggestion could have been truthfully made; and if the court proceeded to decide the question of a receiver, a consideration of the whole merits of the case would be necessarily involved, and a decision upon that question would be tantamount to an adjudication of the cause. In effect, the decree pronounced by the Circuit court on the hearing may be fairly regarded as disaffirming the right of the bank to a receiver at any period in the cause. This court, it is true, held that the bank was entitled to charge the trust subject with so much of the debt claimed as was justly due; but it was not until its decree was pronounced that the right of the bank to any interest (utterly denied by Hupp and Arthur) was made apparent; nor until then could laches be justly imputed to it in failing to apply for a receiver. Ought the bank to be deprived then of the benefit of the rents and profits in aid of the payment of its debt for which the proceeds of the sale of the property have proven wholly inade *40 quate, because Hupp and Arthur did not present the real and proper case to the court ? Ought Hupp to an advantage, by seeking a mode and measure of relief to which he was not entitled, which he could not have claimed if he had conceded to the bank what was its just right, and had only sought that redress to which he was declared by the court to be entitled? It was at his election to adopt either course; and if he chose to place himself in an adversary and antagonist position entirely, by contesting the whole of the claim of the bank, and denying to it any right, legal or equitable, it should seem that it was at his peril, and that the consequences of making a case, not fitting for the appointment of a receiver, should devolve upon him.
But however this may be: In the second place, I cannot concur in the supposed necessity for an application on the part of the bank for the appointment of a receiver, to entitle it to claim the rents and profits, after what it had previously done to manifest its purpose to take away the subject from Arthur and Hupp, and appropriate it to the payment of its debt. When its purpose had been thus avowed, and the attempt made to carry it out, which was frustrated by the act of Hupp, and when it had asserted its title in Hupp’s suit, it might safely, and without forfeiting any of its rights, await the course of events. From that period the whole subject, the principal and its profits, was taken by the action of the court under its- control, was amenable to its disposition; and neither the one nor the other should thereafter be suffered to be applied otherwise than in the order of the legal priorities of the parties. Certainly, if the bank distrusted Hupp’s ability to account for the rents and profits, and desired to secure them from spoliation in his hands, an application for a receiver would have been a very proper and expedient measure; but if it was satisfied with his responsibility, it might, as I think, treat him as a self- *41 constituted receiver, looking to Ms personal accountability for the value of the rents and profits, if in the sequel it should prove necessary to resort to them in aid of the proceeds of the sale of the property for payment of its debt; but in my view it was not necessary for the bank to go through the form of such an application, in order to found its right to call for such an account as against Hupp, under the circumstances of this case.
The counsel for the appellees strenuously urges that the doctrine upon this subject is settled, and no longer a subject for discussion. He insists that a mortgagor left in possession may take the rents and profits without being liable to account to the mortgagee: and for this he cites several authoiiti.es, and among others the case of Clarke v. Curtis, 11 Leigh 559, concluded, 1 Gratt. 289. I certainly do not mean to controvert any of the authorities maintaining this position. But what I mean to say is, that this right or privilege of the mortgagor is founded upon the consent and permission of the mortgagee, express'd- implied, to his so taking the profits ; but where there is no such consent, or it has ceased, and that plainly manifested, the right depending upon it will cease also. The relation subsisting between the mortgagee and the mortgagor in possession has been assimilated, as I have before remarked, to that between landlord and tenant at will. This may be determined by the will of either party, or it may be determined by the tenant assuming a hostile attitude towards the landlord, as by claiming the fee or disclaiming to hold under the landlord’s title. In this case, I conceive the measures1 taken by the bank as sufficiently manifesting its withdrawal of the permission to Arthur, and Hupp claiming under him, to-hold the possession further without account. And if that were otherwise doubtful, yet the termination of any thing like a permissive holding was fixed and de *42 finitely ascertained by the hostile attitude thereupon assumecl by Arthur and Hupp. They sufficiently put end to the previous relation by their own act. For can be said, that after filing such a bill as they did against the bank, alleging that the • security under which it claimed was utterly invalid and void for all purposes, and denying to it any right on the subject whatever, legal or equitable, the amicable relations and the permission to Arthur and Hupp to hold the possession and receive the profits to their own use, any longer continued ? I think not; and although I do not assert that the relation between the mortgagee and the mortgagor in possession is that of landlord and tenant, for nullum simile est idem, yet I think that Arthur and Hupp having resorted to such a decisive measure, must stand the hazard of the issue which they invited, and so far as the right to receive anything further from the property is involved, must abide by the result which would show whether the bank was entitled to receive anything, and if anything, how much; and that to satisfy the amount that might be found justly due the bank, the whole subject, principal and profits, from that time must be appropriated, before Hupp can be permitted to receive any portion of either.
The counsel for the appellant, in reply to the assertion of the appellee’s counsel, that the mortgagor in possession may receive the profits without account, is not only generally but universally true, cites the case of Cadwallader v. Mason, Wythe’s R. 58; and the opinions of Judges Green and Cabell, in 2 Leigh 58 to 64, and 65, 66, as showing or tending to show that the doctrine is not without qualification. It is an enquiry, however, which in this case I do not think it at all material to pursue, after what I have heretofore said.
The appellee’s counsel cited the case of Wilton v. *43 Dunn, 7 Eng. Law & Eq. R. 406, in which a notice by a mortgagee to a tenant in possession by lease from the mortgagor after the mortgage, unaccompanied by an averment of a subsequent payment by the tenant, was held not a good defence to an action at law for use and occupation by the mortgagor. But I do not think that this case can be reconciled with the case of Pope v. Biggs, (above cited,) and the class of cases in which it has been held that the mortgagee may entitle himself to the rents by notice to the tenant. In Wilton v. Dunn, two of the judges say the defence was not a good one in a court of law. The other two who were present held that the mortgagee could not recover of the tenants the rents overdue at the time of his notice. The case, however, does not touch the question here, because, if for no other reason, the claim advanced by the bank is only for the rents and profits accrued after the time it declared and gave notice of its intention to appropriate the whole subject.
But it is supposed that a sufficient reason for rejecting the claim of the bank to hold Hupp to an account for rents and profits, may be found in the character of the security upon which it must depend; that as it has been ascertained and adjudged to be usurious and void, and as .the bank, to prefer such claim, must step forth from its position of mere defendant, must itself become an actor, and prefer a claim in the character of a party plaintiff, it is in effect asking the court of chancery to lend its aid to enforce a security void for usury, which, according to its settled rule, it always refuses to do. If this view were correct, it would perhaps furnish a sufficient answer to the argument that the bank has lost all right to the rents and profits by its default in not filing a cross bill at once, and asking for thé appointment of a receiver. I think, however, it cannot be sustained. This court has adjudged that the bank was entitled to a decree in the *44 Circuit court that the deed of trust should stand as a security for the amount actually due, and for a sale of property, if necessary. Whatever steps, therefore, ^ may necessary for the hank to take, in order to have the ben'efit of this measure of relief, will be sanctioned and sustained by the court; and if an account of rents and profits pendente lite be necessary in aid of the sale of the property, it should be allowed as a necessary incident. A cross bill is but a means of more effectually defending the original bill, by maintaining the rights of the defendant, whatever they may be, and a proceeding necessary to a complete determination of the matter in litigation. Though the relief which it seeks must of course be equitable relief, it need not show any ground of equity to support the jurisdiction of the court. It is treated as a mere auxiliary suit or a dependency upon the original suit. Story Eq. PI. § 399. And I can perceive no valid objection to the right of the bank to resort to any means necessary to enable it to realize the measure of relief to which it had been declared entitled as defendant, whether by cross bill or otherwise. In effect, the cross bill here was but to cany into execution the decree of .this court in regard to an incident to its principal subject matter.
There is another view of this subject presented by the counsel for the appellant, involving an enquiry into the character in which Hupp took and held possession of the trust subject, and which has been presented with great plausibility. The deed from Arthur to Hupp, of the 4th of September 1839, is somewhat confused in its terms and rather awkwardly expressed; but it provides in substance, among other things, that Arthur might retain possession of the property and carry on the manufactory of iron and the mill and farming operations until such time as Hupp might take possession, but the proceeds of the business were *45 to be applied in payment of tbe debts due Hupp or for wbicb he might be bound, or the debt due Steenbergen, the object being declared to be to use the property so as to liquidate “ the debts” as far as possible ; and Hupp was authorized to take possession of the property, carry on all the works, applying the profits to liquidate “the debts aforesaid;” or, if he thought best, to sell the property and apply the proceeds to liquidate “ the said debts.” And it is insisted that as Arthur and Hupp state in their amended bill, the property had been placed in the hands of the latter for the purpose of making profits to be applied to the discharge of the debts of Arthur, and as Hupp admits he took the property into possession under the deed of the 4th of September 1839, and has made profits, he must now be regarded as having done so as trustee for the benefit of Steenbergen, in common with the other creditors, and should be held to apply them in the order of the legal priority of the parties. I am of opinion, however, that the pretensions of the appellants cannot be maintained on this ground. I fully concur with Judge Moncure in the opinion, that the appellants cannot be considered to have done anything to evince their acceptance of any benefit under the deed of the 4th of September 1839, but the contrary; and that they must be regarded as in fact claiming not under that deed but against it, and as having in effect by their cross bill disclaimed any interest under it. I also fully concur with him, and for the reasons which he has given, that upon the true construction of the terms of that deed, and considering its character and declared object, the bank was not entitled to claim priority to Hupp in the application of the rents and profits received by him whilst in possession under its provisions. No intention can be deduced from the terms of the deed to extend the priority which Steenbergen had over Hupp, any further than it then *46 existed; and it does not follow because in case of a sale the proceeds would have to be first applied to the debt of Steenbergen, the rents and profits accruing in the mean time should also be necessarily so applied. Arthur and Hupp could not by any act of theirs prevent the former from being so applied, while the application of the latter might be otherwise directed; and I think it was the plain purpose of Arthur to dispose of the rents and profits in such manner as should be most to the interest of Hupp, and that they might, so far as the construction of the deed is to determine the question, be applied by Hupp, in the manner in which he alleges in the pleadings he did apply them, towards the payment of the debt due him from the said Arthur.
But for the reasons which I have endeavored to assign, in considering the first ground on which the liability of Hupp is sought to be placed, I am of opinion that the decree should be reversed.
Moncure, J.
The appellants must be entitled to the rents which they claim in this case, if at all, on one or more of these three grounds, viz: 1st. By the terms of the mortgage under which the appellee Hupp took and held possession. Or 2dly. That a mortgagor,. at least after forfeiture, holds and enjoys the mortgaged subject by the mere will of the mortgagee, which may be determined at any time ; from the period of which determination the mortgagee becomes entitled to rents and profits; that the advertisement and injunction of the sale under the deed of trust under which the appellants claim, was equivalent to a determination of their will, by which the appellees had previously held and enjoyed the property conveyed by the deed; and that the appellants are therefore entitled to the rents from the time of the injunction. Or 3dly. That the appellants have been injured, at least to the extent of *47 the value of the rents, by means of the injunction; and the court having granted the injunction, without requiring, adequate security or imposing such ble terms as were proper to protect them against such injury, ought to put them in the same situation as if that had been done; or ought, at least, to compel Hupp to pay to them rents which he has been enabled to receive by means of the injunction. Let us see whether these grounds, or any of them, will sustain the claim.
First, as to the terms of the mortgage under which Hupp took and held possession.
The appellants claim the rents in controversy, not under the mortgage aforesaid, but against it. If they had been entitled to claim under it, they were not bound to do so, but might have disclaimed any interest under it. They did, in effect, disclaim any such interest by their cross bill; and, having done so, cannot complain that no such- interest was decreed to them by the court.
But were they entitled to claim any interest under the mortgage; or, at least, to claim priority over Hupp in the application of the rents and profits received by him under the mortgage ? I think not. That mortgage was obviously made for the benefit alone of Hupp. It is a deed inter partes^ between Arthur of the one part and Hupp of the other. The only declared object of the deed is the security of Hupp and it was expressly declared, that if Arthur should pay and indemnify Hupp, the deed should be void. It is true that the deed provides that the net proceeds of the property, while it might remain in the hands of Arthur, should be applied to the payment and indemnity of Hupp, “ or to the debt due to said Steenbergen.’ ’ But the latter alternative was merely incidental to the indemnity of Hupp. Arthur had conveyed the property, or most of it, for the benefit of Steenbergen. *48 He wished to afford all the indemnity he could to Hupp. His means of doing so were the property conveyed for the benefit of Steenbergen, subject to that conveyance; the profits of that property until it should be sold under that conveyance ; and his remaining property: And these means he devoted to that object by the mortgage. He and Hupp supposed the property conveyed for Steenbergen’s benefit would yield a surplus, after satisfying the purposes of that conveyance; and it was therefore a matter of little consequence to Hupp whether the profits of the property, while it might remain in Arthur’s hands, were applied to the payment of the debt to Steenbergen or the debt to Hupp; as the application in either case would, as the latter supposed, enure to his benefit. But it was obviously not designed by the mortgage, and such is not its fair construction, to give to Steenbergen any further priority over Hupp than already existed. Its design was that the mortgaged subject should be applied, as best it might, to the indemnity of Hupp; and though the proceeds of sale of the property previously conveyed for Steenbergen’s benefit would have been necessarily applicable first to the payment of his debt, for which the property was first bound; yet the mesne profits of the property were hot necessarily so applicable, but might be applied by Hupp first to the payment of his own debt; and would naturally be so applied, if it were his interest to mate such application. That he received and held the property for the purpose of so applying them, he states both in his original and amended bill.
Secondly. Are the appellants entitled to these rents, on the second ground before stated ?
A mortgagee, by virtue of his mortgage, becomes the legal owner of the land, and consequently entitled at law to immediate possession, or to the receipt of the *49 rent, if the land be in lease. . It is a privilege annexed to his estate, that he may evict the mortgagor without notice or demand of possession, and retain the ments, and if the lease be granted subsequently to the mortgage, without his concurrence, he may also evict the lessee of the mortgagor without notice and retain the emblements; and may have an action for mesne profits not actually paid over to the mortgagor. Coote on Mortgages 339. But in equity the mortgagor remains the actual owner of the land until foreclosure; and it is a privilege annexed to his estate, that he is not bound to account for the rents and profits while in possession, even although the security shall prove insufficient. Id. 325. But while a mortgagee is entitled to immediate possession, he rarely takes or demands it, Unless the security be insufficient: for he prefers not to make himself the bailiff of the mortgagor, and receive his debt, in small payments, out of the rents and profits; but to have a foreclosure of the mortgage, and where the terms of the mortgage or the local law will admit of it, a sale of the mortgaged subject. The possession of the mortgagor is not adverse to that of the mortgagee, and the latter may foreclose the mortgage, without having first obtained actual possession. After foreclosure, the mortgagee, or the purchaser, if there be a sale, may take possession of the subject as his absolute property. The commencement of proceedings for foreclosure is not, in itself, a termination of the possession of the mortgagor and his incidental privilege to receive the rents and profits. The mortgagee may no more desire to make himself the bailiff of the mortgagor pending these proceedings than before ; and, if the security be ample, would not do so. Wilder v. Houghton, 1 Pick. R. 87; Howell v. Ripley, 10 Paige’s R. 43; Cooper v. Davis, 15 Conn. R. 556. The mortgagee may take possession, or have a receiver appointed, as well after as before the commencement *50 of Ms sMt for foreclosure; but until he does so, or something eqmvalent thereto, the right and privilege of the mortgagor remain. Not. having done so, he cannot, when he ascertains that the security is insufficient, claim the rents and profits received by the mortgagor pending the suit.
These principles, which are applicable to mortgages, are if possible still more so to deeds of trust. As ordinarily drawn, a mortgage conveys an estate on condition to be defeated by payment of the debt; while a deed of trust conveys an estate in trust to be sold for the payment of the debt. The mortgagee may take possession, receive the rents and profits, and apply them to the payment of the debt; and this is consistent with the terms of the mortgage, and sometimes with the actual intention of the parties. A deed of trust rarely gives any such power, or contemplates any such means of payment: and the only mode in which a trust creditor can ordinarily have the rents and profits accruing before a sale, applied to the payment of his debt, is to have them sequestrated for that purpose by a court of chancery, if the subject itself be not ample security. If the subject be in the adverse possession of another, and a suit for possession be necessary, the creditor or his trustee, after recovering possession, may recover the mesne profits; and these profits, with any other that may accrue before a sale can be made, will be applicable to the payment of the debt. This however is merely incidental to the object of the deed, which is the security of the debt by a sale of the subject, if necessary, and not by renting it out.
Let us now apply these principles to the case under consideration. The advertisement of the sale was not a demand of possession: Actual possession, we have seen, was not necessary to give validity to the sale. The object of the advertisement was to effect a sale, not to obtain possession, which could be obtained by *51 the purchaser after the sale. The sale was enjoined on the ground of usury, and because the whole debt claimed under the deed was not due. When it enjoined, it was for the appellants to determine whether they would take actual possession, or have a receiver appointed; or rely upon the subject alone as their security, and in the mean time permit the grantor and his assigns to remain in possession. If they considered the subject as ample security, they would naturally prefer to rely alone on that, and not to incur the trouble, responsibility and inconvenience of becoming the bailiffs of their debtor, and receiving payment of their debt by an application thereto of the rents and profits. They may have so considered, and therefore chose to let the matter stand as it was until the questions raised by the injunction suit could be decided. If so, they could of course have no right, when they found they were mistaken, to demand the rents and profits which had been received by the debtor or his assigns. But whether they so considered or not, or whatever may have been their reason for not taking possession, or applying for the appointment of a receiver, it is enough that they did not do so; and they cannot therefore recover the rents and profits which they claim. They did nothing which was inconsistent with the continuance of things precisely as they were when the injunction was obtained. They did nothing to indicate that they desired possession of the subject, or a sequestration of its rents and profits; and they cannot, after permitting the appellees to remain in undisturbed possession for nearly seven years, require them to account for rents and profits which have been received and applied.
Thirdly. Are the appellants entitled to the rents in question, on the third and last ground before stated ?
The injunction in this case having been granted not to stay proceedings on a judgment' or in a suit, but to *52 restrain a sale of property under a deed of trust; the court which granted it, having no rule prescribed by should have required security to such extent anc^ sllch kind as in the exercise of a sound discretion seemed to it proper. 2 Rob. Pr. 240. If the property was considered ample security for the payment of the debt secured by the deed, in case the whole of it should turn out to be due, it might not have been an improper exercise of the discretion of the eourt to have required sufficient security for the payment only of such costs and damages as might be recoverable on a dissolution of the injunction, if the property should prove to be .sufficient for the payment of the debt ascertained to be due. If the appellants differed with the court as to the sufficiency of the security, they might, on showing that it was insufficient, or even that there was room for rational doubt upon the subject, have obtained an order that the injunction should stand dissolved, unless further security were given; and, as a means of affording it, the appellee Hupp might have been required to surrender the property into the hands of a receiver, or be himself accountable for rents and profits as a receiver of the court. This, I think, was the only additional security which should have been required in the case, if application for additional security had been made and the propriety of requiring it had been shown. The bill stated a case which made it improper for the trustees in the deed of trust to sell the property until the validity of the deed was established, and the amount of the debt due to the appellants was ascertained. And the impropriety of such a sale was established by the decrees rendered in the case; which showed not only that the deed was tainted with usury, but that the principal debt due to the appellants, instead of being forty thousand dollars, was only twenty-four thousand one hundred and forty-two dollars and *53 seventy-nine cents, and that the property was subject to a prior incumbrance of a large amount, which was unascertained when the injunction was granted. was the duty of the trustees, under these circumstances, before making a sale, to have applied to a court of chancery to remove the cloud over the title, raised by the imputation of usury, and to ascertain the amount due to the appellants, and the amount of the prior incumbrance. And the trustees failing in that duty, it was the right of Arthur as grantor in the deed, and Hupp as subsequent incumbrancer, to make such application. Lane v. Tidball, Gilm. 130; Gay v. Hancock, 1 Rand. 72; Miller v. Argyle's ex'ors, 5 Leigh 460; Bryan v. Stump, 8 Graft. 241. It would therefore have been unreasonable to have required the appellees to give security for the payment of the trust debt, or so much thereof as might be ascertained to be due, in case the injunction should be dissolved, in whole or in part: but it would not have been unreasonable to have required them to surrender the property to a receiver, or be accountable for the rents, if it had been shown that any ground for doubt existed as to the sufficiency of the security in any event. But the appellants may have concurred with the court in considering the property as ample security for the payment of the whole trust debt, and therefore did not choose to interfere with the possession, or have anything to do with the rents, but preferred to wait for a dissolution of the injunction and a sale of the property. Whether they so concurred or not, they did not interfere; and I think they cannot, after the lapse of six or seven years, and after ascertaining that the property is not sufficient security, recover the mesne profits, upon the ground that the court, without being asked, and without any evidence of the insufficiency of the security, should have placed the property in the hands of a receiver, or declared Hupp accountable as such for *54 rents and profits, as a condition for granting the injunction. The appellants had the same right, and have had the same motive, to permit the property to remain in the possession of the appellees after, as before, the institution of the suit; and that they preferred that the property should so remain, or considered it sufficient security, and were therefore indifferent on the subject, is fairly inferrible from the fact that they made no attempt to interfere with it. It was not the duty of the court, and would not have been proper for it, ex mero motu, to have interfered with the possession of the appellees.
But it is contended for the appellants, that though they would have been entitled to have had a receiver appointed, if the appellees had framed their bill with a view to the modified relief which was granted to them by the court; yet, as the latter claimed full reliefagainst the deed of trust on the ground that it was void for usury, the former were not so entitled; there being no case in which a receiver will be appointed against a party in possession claiming the legal title, unless the party applying for such appointment makes out a grima facie claim, and shows that the property is in danger, or that the other party has been guilty of fraud or spoliation. And it is, therefore, further contended, that the appellees, having so framed their bill as to prevent the appellants from having a receiver appointed, should be accountable for the rents. The rule contended for may be true when applied to a suit against the party in possession claiming the legal title. But in. an injunction suit brought by that party against an adverse claimant, there can be nothing in such a rule which would prevent the eourt from appointing a receiver, as a condition for granting or continuing the injunction.
But what was there to prevent the appellees from bringing a suit at law for possession under the deed of *55 trust ? A party having the legal title cannot, in general, have a receiver appointed, because he has no need of one; having a right to recover the possession action at law, and also the mesne profits from the commencement of the defendant’s adverse possession. Or if the appellees had an equitable title only, under the deed of trust, what was there to prevent them from bringing a suit in equity for possession ? The bill of injunction, so far from opposing the institution of such an action or suit, invited it. The chief if not only object of the bill was to drive the appellants to the institution of such an action or suit. If they had instituted one, and shown their ’right to the possession, they would have recovered it, and the mesne profits also, and the injunction would ipso facto have been dissolved; for the appellees would have had the benefit of all they asked, and all that the court below gave them—a day in court. Surely it can be no answer to this view to say that the deed was tainted with usury, and therefore the appellants could not recover the possession by action or suit. If they could not have recovered, it was because they were not entitled. And if they were not entitled in law or equity, to the possession, how can they be entitled to the rents and profits ?
How then can the doctrine of Pulteney v. Warren, 6 Ves. R. 73, apply to this case ? In that case, an account of mesne profits, since the title accrued, was decreed against executors, upon the special ground that the plaintiff was prevented from recovering in ejectment by a rule of a court of law, and by an injunction at the instance of the occupier, who ultimately failed both at law and in equity. The doctrine of that case seems to be very reasonable, and has never, so far as I know, been questioned: On the contrary, it has been since approved and followed in a number of cases and by the best judges. Bond v. *56 Hopkins, 1 Sch. & Lef. 413; O'Donel v. Brown, 1 Ball & Beat 263; Grant v. Grant, 3 Cond. Eng. Ch. R. 533; Sanxter v. Foster, 18 Id. 302. But in Pulteney v. Warren Lord Eldon seems to place tile decree upon two grounds: first, that the injunction was incapable of being maintained at the hearing; and secondly, that the plaintiff had no remedy at law; or that it was, at least, difficult or doubtful. In that case, the injunction had been wholly dissolved, and the plaintiff’s remedy at law was at least extremely doubtful. Lord Redesdale, in Bond v. Hopkins, after citing with approbation Pulteney v. Warren, says : “It would be very strange that a party having no pretence finally to relief in equity, should get it, in effect, by the delay occasioned by the pretence under which he obtained the interference of the court in his favor.” And Judge Story, in reference to the doctrine in question, says: “A definite and very satisfactory ground to maintain the jurisdiction in such cases is, that it is inequitable that a party, who suspends the just operation of a suit or judgment by an injunction, should thereby deprive the other party of his rights and profits belonging to the suit or judgment, if the merits turn out to be ultimately in favor of the latter.”
Nov/, in this case, neither of the two apparent grounds of the doctrine of Pulteney v. Warren exists. First, the appellees in their bill set up no pretence; misstated no facts. They averred that the transaction was usurious, and they could prove it without a discovery ; and that Steenbergen had not complied with his contract as he had made it, but had failed to pay a portion of the debts, and transfer a portion of the stock, he had contracted to advance and transfer. They substantially proved these averments, and the Circuit court, upon the doctrine of Marks v. Morris, gave them the relief for which they prayed, by decreeing the injunction to be continued in force until the *57 question of usury should he decided by a court of law upon some regular proceeding on the bond or deed, and until the further order of the court upon a cate of such decision. It is true this decree was reversed by this court in the Bank of Washington v. Arthur, 3 Gratt. 173; but reversed, upon the ground, not that the contract was not usurious, for the court expressly decided that it was, but that the usurious contract embraced a pre-existing debt which might have been recovered in an action at law, to which its having been embraced in the subsequent usurious contract would have been no defence. The fact that the usurious contract did embrace such a pre-existing debt, was admitted in the bill. But this court did not dissolve the injunction and dismiss the bill; but decreed that the amount justly due from Arthur to Steenbergen should be ascertained; that the bond and deed of trust should stand as securities for that amount and no more; that payment thereof should be enforced, if necessary, by a sale, under the direction of the court, of the property conveyed by the deed of trust; and that the case should be remanded for further proceedings accordingly. The appellees, then, stated a true case; sustained it by evidence; obtained in the court below the full relief which they claimed; and obtained in this court such relief as fully vindicated the propriety of their resort to a court of equity and the remedy by injunction. In fact, the injunction never has been dissolved, and was not intended so to be. To have dissolved it, might have been fatal to the appellant’s security, by exposing the deed of trust to the objection of usury. The injunction was continued, and the cause was retained, in order that the proper accounts should be settled, the amounts and priorities of the incuftibrances ascertained, and a sale made and the proceeds applied under the control and direction of the court. How then can it be said, as it was by *58 Lord Eldon, in Pulteney v. Warren, that “ the injunction was not capable of being maintained at the hearing or as it was by Lord Redesdale, in Bond v. Hopkins, “ that the appellants had no pretense finally to relief in equityor as it was by Story, that “ the merits of the suit turned out to be ultimately in favor of the appellants.” Secondly, as we have already seen, the injunction interposed no obstacle to a suit at law for possession under the deed, and the legal remedy was therefore involved in no doubt or difficulty except what was created by usury; which can certainly be no ground for giving the appellants the benefit of the doctrine in question.
Since writing the above, I .have read, and carefully considered, the opinion of Judge Lee, and though Ms views of the case are certainly very strong, they have not satisfied me that my opinion is in any respect erroneous. How stood the case at the time the injunction was granted? There were three incumbrances upon the property. 1st, a deed of trust for the benefit of John Arthur’s heirs; the amount due on which was altogether unascertained and uncertain. 2dly, the deed of trust for the benefit of Steenbergen, which was grossly usurious, and the amount due on which was also unascertained and uncertain. 3dly, the mortgage to Hupp. The appellants, the assignees of Steenbergen, urged the trustees in his deed to close the same by a sale. What ought the trustees to have done? The answer is given by this court, through Judge Eoane, in the leading case of Lane v. Tidball, Gilm. 132. “ We have no hesitation,” say they, “ in repeating the sentiments which have fallen from this bench, that a trustee in a deed of trust is to be considered the agent of both parties j that he ought to act impartially between them; that he ought to disregard the suggestions of either party, inconsistent with that duty; and has in general no greater powers touching *59 his trust than a commissioner of a court of equity. We will add that he may, of his own motion, apply to a court of equity to remove impediments to a fair cution of his trust; as also, if necessary, to adjust the actual sum which ought to be raised by the sale.” The trustees, however, did not do this. What then was the right of Arthur and Hupp ? The answer to this question also is given in the same case. “ If he,” the trustee, say the court, “should fail, however, to do this, the party injured by his default has an unquestionable right to do it. These principles apply with peculiar force to the' actual case before us. The party in this case has enacted no imperious law (if we may so express ourselves) ousting the jurisdiction of a court of equity. That jurisdiction, therefore, exists in full force, on its ordinary principles in relation to it.” The party, at whose instance the court interposed in that case, was a creditor, in regard to whom the court said, “It is not the grantor himself who is to be affected, but a meritorious creditor; one equally entitled to the aid of a court of equity with the appellees themselves. That court delights to pay all creditors, and will not reject the just claims of any. Those claims cannot be paid unless that fund in question should be made to sell for its full value; and that cannot be done without the interposition that is now prayed; compared to these objects a little delay is deemed of no account in a court of equity.” In Wilkins v. Gordon, 11 Leigh 547, 556, Tucker P., (in whose opinion the other judges concurred,) after repeating the principle laid down in Lane v. Tidball, says, “ This indeed would seem to be an axiom in the law. Until the amount of the creditor’s demand is adjusted, he cannot resort to compulsory means to enforce the payment.”—“ These judgment bonds, as they have been not inaptly called, to which, when the debt is certain, we have given, perhaps unwisely, the force of *60 judgments, ought not to be regarded in that light, when they do not fix distinctly and definitely the amount of the demand. In all such cases, the deed of trust has but the effect of a mortgage. It secures the debt indeed, but it vests no power in the creditor, or in his trustee, to enforce payment, except through the agency of the courts, unless the amount be voluntarily adjusted by the agreement of the parties.” There could not then have been a sale of the property in this case, without the interposition of a court of equity; and that interposition should have been invoked by the trustees, or the appellants. Suppose they had invoked it: Who would have been entitled to the possession and profits of the property until the sale? The grantor and his assigns of course. Instead of doing so, the appellants urged the trustees to close the deed by a sale; and the latter accordingly advertised, and were about to make a sale; which compelled the grantor and last incumbrancer, the appellees, to invoke the interposition of the court. That interposition was not a mere favor to the appellees, but their right. Why are they not equally entitled in this case, as they would have been in the other, to the possession and profits of the property until the sale ? Can the failure of the trustees and the appellants to do what they ought to have done, and what was necessary to be done, to give effect to the deed, confer on the latter any benefit to which they would not have been entitled if they had performed their duty ? Can the performance of that duty by the appellees take from them any benefit to which they would have been entitled if it had been performed by those to whom it more appropriately belonged? I think not. It is true, that whether the interposition of a court be invoked in such a case by the trustee, the debtor, trust creditor, or subsequent incumbrancer, a receiver will be appointed, on motion of any of the creditors con *61 cerned, if the property be insufficient for the satisfaction of all of them. But until such appointment or a sale, the right of the debtor and his assigns to possession and the profits continues. In this case, a receiver was appointed so soon as a motion was made for that purpose by the appellants.
It is said that the bill of the appellees claimed relief alone on the ground of usury, and contained no prayer for general relief: that it sought to avoid the deed of trust entirely. It is true, that the main object of the bill was to avoid the deed entirely on the ground of usury. But it also stated that Steenbergen did not comply with his contract as he had made it, but failed to relieve Arthur from a portion of the debt he contracted to assume, and moreover failed to transfer a large amount of stocks according to contract; and it prayed all proper relief not inconsistent with the purpose of the bill, which was to procure a fair trial of the usury charged.
This court was of opinion, that though the bill was founded upon the doctrine of Marks v. Morris, and looked entirely to the measure of relief thereby indicated, yet, inasmuch as it presented a case, which, upon the facts disclosed, entitled the debtor, and those claiming under him, to relief - against the usurious contract and securities upon equitable terms, it was proper, instead of dismissing the bill, to decree such relief as the general principles which govern courts of equity indicate and require; and the court therefore reversed the decree of the Circuit court, and directed the amount really due to the appellants to be ascertained, and the bond and deed of trust to stand as securities for its payment. And when the case went back to the Circuit court, an amended bill was filed by the appellees, charging more specifically the failure of Steenbergen to comply with his contract, and referring to the prior incumbrance in favor of John Ar *62 thur’s heirs, on account of which it seems that the appellees had before supposed there was little or nothing due. It turned out however, on the settlement of the accounts, that upwards of eleven thousand dollars were due on that prior incumbrance; and that the debt really due to the appellants was about fifteen thousand dollars less than they claimed. The sale then could not have been made until these accounts were settled; and until then the appellants could have had no just ground to complain of the postponement of the sale. That the appellees claimed relief on the doctrine of Marks v. Morris, which they did not obtain, cannot make them any more liable for rents and profits than they would have been, if no such claim had been asserted. It is enough that there was other ground for postponing the sale, which it was necessary to remove before a sale could be made; that such necessity devolved, peculiarly, on the appellants; and that they were never, for a moment, obstructed by the injunction, in the fulfillment of that necessity. They might have brought their suit for a settlement, and the appointment of a receiver in the mean time, as well before as after the decree of this court. If the deed of trust had been valid, the sale must still have been postponed, and the appellees would not have been liable. Can they be liable merely because the deed was void for usury ? Will a court of equity not only set up a usurious deed, but give the usurer a premium for his usury ? The fact is, the usury in the transaction, if nothing else, would be fatal to the claim of the appellants. They claimed as an intermediate incumbrancer, and could not have gotten the benefit of their incumbrance without coming, or being brought, into a court of equity. Suppose they had come; what would they have gotten? Nothing. They would even have lost the property itself; much less its rents and profits. What have they lost.by being brought in by the *63 appellees? Nothing. But they have gained the property, subject to the first incumbrance. Suppose the injunction bond had been taken in an ample penalty and with good security, conditioned to pay all damages which might be sustained by them by reason of the injunction: What damages could have been recovered on the bond ?
I have not particularly noticed the many authorities referred to in the argument of this case, because it would take up too much time and space to do so. I have read and considered them all, with one or two exceptions, to which I had not convenient access, and believe that none of them are opposed to the views I have expressed. And though I have had some difficulty in coming to a conclusion, yet, upon the whole, I am of opinion that so much of the decree of the Circuit court as was appealed from in this case should be affirmed.
Daniel, J. concurred in the opinion of Moncure, J.
Decree affirmed.