*Hartford,*
June, 1844.

Thrall
*v.*
Spencer.

## THRALL against SPENCER:

### IN ERROR.

*A* having indorsed the negotiable notes of *B*, for *B's* accommodation, *B* mort-gaged to *A*, for his security, by one deed, certain parcels of real estate, and by another deed, certain articles of household furniture. At the time of this transaction, it was supposed by the parties, that the mortgage of the real estate would be sufficient to indemnify *A*, and the conveyance of the furniture was not made for this purpose, but to protect the property from attachment, by *B's* creditors. After the notes so indorsed had passed into the hands of *bona fide* holders, and had finally become the property of *C*, for a valuable consideration, *A* released to *B* all his interest in the furniture; and *B*, imme-diately afterwards, mortgaged it to *D*, the parties having full knowledge of the former mortgage of such furniture to *A*, but acting without any fraudu-lent intent. On a bill in chancery, brought by *C* against *D*, to obtain the benefit of the furniture, to be applied on the notes held by *C*, (*B* and *A* being bankrupt,) it was held, 1. that *C* having neglected to make any claim for the furniture, while *A* retained the title, came too late for relief; 2. that the mort-gage not being made to the creditor to secure the payment of the debt, but to the indorser to secure him on account of his liability as such, he might well relinquish the pledge, provided he acted without any fraudulent design, be-fore any claim was made upon him for the property; 3. that the mortgage in question being fraudulent in law, as against the creditors of *B*, it was, on this ground, not inequitable in *A* to relinquish such a title, and thereby do away the fraud; 4. that *D*, under the circumstances of the case, was not the trustee of *C*, in regard to the property; 5. that if the title of *A*, the fraudulent grantee, was transferred to *C*, he would stand in no better situation than *A*, and would be liable at any time, to have the property taken from him, by the creditors of *B*; 6. that for these reasons, *C* was not entitled to the relief sought.

This was a bill in chancery to obtain the benefit of certain articles of household furniture.

*Silas Andrus* having indorsed, for the accommodation of *Benoni B. Barber*, three promissory notes of 1000 dollars each, dated *February* 21st, 1839, payable in one year, *Barber*, on the 12th of *October*, 1839, as security to *Andrus*, for such indorsements, mortgaged to him, by one deed, certain parcels of real estate, and by another deed, the articles of fur-niture mentioned in the bill. These notes afterwards, before they became due, and while they remained wholly unpaid, passed into the hands of *bona fide* holders; and some time in the year 1840, (the exact time did not appear,) the plaintiff, by purchase, became, and still is, the holder and proprietor thereof.

In the fall of 1839, *Barber* and *Andrus* became utterly in-solvent, and unable to pay said notes; and they each subse-

quently obtained a discharge from all their debts and liabilities under the late bankrupt law of the *United States.*

On the 10th of *August,* 1841, *Andrus* executed and delivered to *Barber,* a release deed of that date, thereby releasing to *Barber* all his (*Andrus'*) right and title in said articles of household furniture. Immediately afterwards, on the same day, *Barber,* by a mortgage deed of that date, conveyed said articles of furniture (except a small portion thereof, which he had disposed of,) to the defendant, as security for the payment of *Barber's* promissory note of the same date, for 350 dollars, payable to the defendant, or order, two years from date, with annual interest.

When the mortgage from *Barber* to *Andrus* was executed, it was supposed, by both parties, that the real estate embraced therein was sufficient security to protect and indemnify *Andrus,* in respect of his liability for *Barber;* and *Barber* executed the mortgage deed embracing the articles of furniture, to prevent their being attached, by other creditors, and sacrificed. After the execution of the mortgage, *Barber,* with the consent of *Andrus,* disposed of some of said articles, and applied the avails to the support of his family.

At the time of the release to *Barber,* and his mortgage to the defendant, the parties knew of the existence of the prior mortgage, and that the notes secured thereby were outstanding in the hands of *bona fide* holders; but there was no fraudulent intent in the parties, or either of them, and no fraud in the transaction, except so far as a court of equity may infer fraud from the facts herein stated. It was still supposed, by *Barber* and *Andrus,* that the real estate embraced in one of the mortgage deeds of the 12th of *Oct.,* 1839, was sufficient security for the notes, without the articles of furniture. The defendants confided in their statements, and they all believed, and were advised, by the legal counsel whom they consulted, that the arrangement might be made, without defrauding or injuring the holder of the notes.

When those notes were purchased by the plaintiff, he took them at a discount of 25 cents on the dollar, this being as much as they were worth to the vendor, considering the circumstances of the maker and indorser, and the situation and value of the mortgaged premises. There had been some depreciation in the value of real estate, such as that embraced in

*Hartford,*
*June,* 1844.

Thrall
*v.*
Spencer.

the mortgage deed of the 12th of *October*, 1839, between the date of that deed, and the time when the plaintiff purchased the notes ; and the real estate embraced in said mortgage deed was not alone of sufficient value, at the time when the mortgage to the defendant was executed, fully to pay and satisfy said notes, which remain still unsatisfied in the hands of the plaintiff, he being still the lawful proprietor thereof.

The articles of furniture so mortgaged to the defendant have been fairly sold, (with the exception of two pier tables, of small value,) the proceeds of which, after deducting expenses, amount to 239 dollars, 80 cents, and no more ; which proceeds have been received by the defendant.

Upon these facts, the court dismissed the plaintiff's bill ; and he thereupon filed his motion in error, and brought the record before this court, for revision.

*T. C. Perkins*, for the plaintiff in error, after remarking that the mortgages from *Barber* to *Andrus*, were given to secure the payment of the *notes*, and not merely to indemnify the indorser, contended, 1. That chancery will give the holder of the notes the benefit of the security. *Homer* v. *The Savings Bank of New-Haven*, 7 *Conn. R.* 478. *Moses* v. *Murgatroyd*, 1 *Johns. Ch. R.* 129. *Philips* v. *Thompson*, 2 *Johns. Ch. R.* 418. *Curtis* v. *Tyler*, 9 *Paige*, 432. *Halsey* v. *Reed*, 9 *Paige*, 446. *Bank of Auburn* v. *Throop*, 13 *Johns. R.* 505. *Spencer*, having both constructive and actual notice, stands on the same ground with *Andrus*. 1 *Pet. R.* 299. 3 *Mason*, 312.

2. That if the mortgage of the furniture was fraudulent, it ought not to affect *Thrall*, because he was not a party to it, although the security was in fact given for the benefit of the indorser and the holder of the notes.

3. That there being, in this case, no doubt as to the validity of the debt, and the necessity of the security in question, and that *Thrall* acted *bona fide*, his title ought not to be vacated.

*Ellsworth*, contra, insisted, 1. That upon the facts found, the plaintiff had no occasion to resort to a court of chancery. If this furniture is vested in him, he may take it at any time; or he may recover the proceeds in an action at law.

2. That upon the facts found, the plaintiff is not entitled to any relief.

WAITE, J.  It appears from the bill and report in this case, that *Barber* made three notes, of one thousand dollars each, payable to *Andrus*, or order, in one year, which *Andrus*, at the request, and for the accommodation of *Barber*, indorsed.  For the security of *Andrus*, in consequence of his having so indorsed these notes, *Barber* mortgaged to him, by one deed, certain parcels of real estate, and by another deed, certain articles of household furniture.  After these notes had gone into the hands of *bona fide* holders, and finally had become the property of the plaintiff, *Andrus* released to *Barber* all his interest in the furniture; and the latter, immediately afterwards, mortgaged the same, with the exception of a small portion, to the defendant *Spencer*.  When these last conveyances were made, the parties had full knowledge of the former mortgage of the furniture, but acted without any fraudulent intent.

Upon these facts, can the claim of the plaintiff be supported?

In the first place, he has no legal title.  The first mortgage of the furniture was not made to the holders of these notes, but to the accommodation indorser, for his security.  Even if *Andrus* were still the holder of the property, the plaintiff could only reach it through the intervention of a court of equity.

But he has taken an assignment of the notes, without making any claim for the property while *Andrus* retained the title.  He has lain still, until the latter had parted with that title and the possession, and the property had gone into the hands of a *bona fide* holder, for valuable consideration.  He therefore comes too late for relief.

His case does not stand upon as high ground as if the mortgage had been made to the creditor to secure the payment of the *debt*.  It was made to an indorser, not to secure the payment of the debt, but to secure him on account of his liability as an indorser.  The latter may well relinquish his pledge, provided he acts in good faith, and without any fraudulent design, before any claim is made upon him for the property.

It is said, that a person coming into possession of trust property, with notice of the trust, shall be considered as a trustee, and bound, with respect to that special property, to the execution of the trust.  *The Mechanics Bank of Alexandria* v.

*Seton* & al. 1 *Pet. R.* 309. This was undoubtedly true. But how could *Andrus* be considered as the trustee of the plaintiff, when no such trust was specified in the conveyance to him, and no claim was made upon him, to have the property so holden? The defendant might well infer from these circumstances, that the plaintiff did not require the aid of the furniture to obtain satisfaction for his debt.

But there is another feature in this case. The report shows, that when the mortgage of the furniture was made, it was supposed by the parties, that the mortgage of the real estate would be sufficient to indemnify the indorser; and the conveyance of the furniture was not made to secure the indorser, but to protect the property from attachment, by *Barber's* creditors. As against those creditors, the mortgage was fraudulent and void. Can *Andrus* be charged with inequitable conduct towards the plaintiff, by relinquishing such a title, and thereby doing away the fraud? Had the plaintiff procured from *Andrus* a transfer of his title, with knowledge of the fraud, he could stand in no better situation than *Andrus.* Neither could hold, as against the creditors of *Barber.* For aught that appears in the case, the plaintiff might have attached the property, at any time before the mortgage to *Spencer.*

Besides, can a court of equity be called upon to transfer the title of a fraudulent grantee, after the fraud is made manifest, to another person, who would stand in no better situation than such fraudulent grantee, and would be liable, at any time, to have the property taken from him, by the creditors of the grantor? Such a proceeding would be a novelty in the history of judicial proceedings.

We see no reason for disturbing the decree of the superior court.

In this opinion the other Judges concurred.

Judgment affirmed.