Ellswokth, J.
The petitioner having been adjudged liable as maker of the note in question, in a suit brought by the Tradesmen’s Bank, by direction and for the benefit of the respondent Winchester, seeks in equity the stay of further proceedings on *349 that judgment, and that the judgment itself may be decreed to be cancelled.
It appears that after the malting of the note by Post, the petitioner, and its indorsement by Wheeler, the payee, the Arms Company obtained the indorsements of Gaston and Winchester, and then procured the note discounted at the Tradesmen’s Bank for their benefit. At the same time, or.immediately after, the Arms Company gave Gaston and Winchester a mortgage, and subsequently other mortgages, to secure them for these indorsements, and for other indorsements and liabilities, to an amount not exceeding $80,000 at any one time. When this note came due it was dishonored. The Arms Company had failed, and Post the maker, and Wheeler the payee and first indorser, neglecting to pay it, Winchester himself (Gaston being dead) paid the note to the bank, and then left it, as a subsisting note, to secure his further indebtedness to the bank. The assignee of the Arms Company, in closing up the affairs of the company, sold at auction all the property embraced in the mortgages to Gaston and Winchester. The equity was purchased by Winchester at the sum of $700, subject, as the motion states, to the incumbrances upon the property.
The petitioner now claims that this note was satisfied and extinguished by means of the purchase by Winchester, and *that Winchester ought not to have recov- [ *428 3 ered judgment upon it, and ought not now to take any benefit from the judgment. If this be so, why, we ask, was not this defense set up at law ? If the note was paid by funds in Winchester’s hands, or by virtue of an agreement to that effect, either expressly made or raised by legal implication, the defendant could have availed himself of it by way of defense to the action at law, and ought to have done so. Is not that judgment conclusive that the debt was not paid at that time ? It must be so unless the defense could not then have been made, as growing out of facts subsequently occurring, or facts of a purely equitable character not within the cognizance of a court of law.
Passing this however, the argument must fail, if for no other reason than that the value of the property mortgaged to Gaston and Winchester, (upon which the petitioner bases his claim to equitable relief) is not found by'the court. The amount due them is found to be $35,724. Until this debt is fully paid, it would seem clear that none of their security should be taken out of their hands. They are to be fully indemnified, come what may. Winchester insists that, after taking all this property and collecting the notes in question, he will not by any means be *350 indemnified. How this is we can hot say, for the motion does not inform us. It states only certain evidence, from which an inference that the debt is paid is attempted to be drawn by the petitioner’s counsel, but the fact it does-not state, and indeed the judge says, that from any evidence before him he was not able to find the fact. Now, for a court of equity in these circumstances to proceed upon the assumption that the debt is paid, or that the property mortgaged is of so much value that it is inequitable for the mortgagee to retain this note, seems to us to be going too far.
It'is said that all the paper which has upon it the names of' Gaston and Winchester, and comes within the description in the conditions of the mortgages, must be held to ‘be proportionally secured by the mortgages, so that each note or draft is entitled to its proportion of the property in payment, which 'of course must somewhat reduce the amount due on [ *429 ] *this note. Whatever propriety there may be in the general rule of law here asserted, it does not apply to all cases, but only to such as. present peculiar equitable circumstances which do not exist here. Doubtless it is true that in equity the security which a creditor holds for the payment of" his debt is, in ordinary cases, attached as an incident to the debt itself, and passes with it into the hands of a purchaser, or of the person who is obliged ultimately to pay the debt, or, where there are several notes secured, held by different parties, to the several parties interested in proportion to the amounts of their claims. This is well settled as a general rule. Stebbins v. Hall, 29 Barb., 533. But where a person agrees to become an indorser generally, not to exceed a specified amount, and takes a mortgage to indemnify himself to that amount, as was done in this case, it bv no means follows, nor do the authorities so hold, that the mortgage is an appropriation of a fund in the indorser’s hands for any and each specific note indorsed by him. If it. were so'the indorser could not return or give up his security, however he might desire to do it. But he certainly may do this, if it is done fairly, before there is any insolvency, and before any equities are vested by subrogation or otherwise in third persons who have advanced their money knowing of the security so given to the indorser. This is the view of the subject presented in the cases of Thrall v. Spencer, (16 Conn., 139,) Homer v. Savings Bank, (7 id., 478,) New London Bank v. Lee, (11 id., 112,) and Lewis v. DeForest, (20 id., 427.)
But further, the doctrine has no relation to the present case. Gaston and Winchester, are not co-sureties with Tost on this note. *351 Post is, and must be treated as, the maker and principal debtor, and Gaston and Winchester, when they endorsed the note, had no knowledge that it was not a business note, as on its face it appeared to be, and as it in fact was as the matter stood at the time of the indorsement. But, were it otherwise, were the note an accommodation note, the parties are liable to each other in the order in which their names stand on the paper. This is the rule of law, in the absence of any agreement or understanding to *the contrary. 1 White & Tud., [ *430 ] Lead. Eq. Cas., 114. Smith v. Smith, 1 Dev. Eq. 173. Brahan v. Ragland, 3 Stew., 247. Farmers’ Bank v. Van Meter, 4 Rand., 553. Craythorne v. Swinburne, 14 Vez., 160. Longley v. Griggs, 10 Pick., 121. 33 Eng. L. & Eq., 291. McCarty v. Roots, 21 How., 432.
It is again said, that the respondent, by purchasing the equity of redemption, has got into himself both the legal and equitable titles, and that the entire debt of $35,724 must, as a consequence, be held to be paid or cancelled; and, if not as a legal consequence, that yet Winchester agreed that it should be só by assenting to the terms of sale as announced by the assignee at the time of the sale.
First then, as to the sale. What was its legal and proper effect ? Did it of itself, irrespective of any supposed agreement, cancel this large debt ? I perceive no reason for such a result, which I should regard as entirely an anomaly. As the law was at one time in this state, a foreclosure and possession were held to extinguish the mortgage debt; but, so manifestly absurd and unjust was this rule, that the legislature many years since altered the law, and provided that the property should be held to be taken at its value only, and so much of the debt as remained should stand as before.
In the state of New York, and in some other states, the mortgaged premises are sold under an order of the court, and the amount realized is applied oil the debt. Our law, in the mode prescribed'for applying the property to the debt, amounts essentially to this. In the one case the sale shows the value of the property, in the other it is shown by evidence in court. If then a purchase in the state of New York, at the public sale by the mortgagee, (and the mortgagee may buy the property as well as any other person,) does not cancel the mortgage debt, and a foreclosure in this state does not, why should a purchase of the equity of redemption at a public sale work such a result ? Certainly it cannot be because of a union of the equitable and legal titles, for this is so in the case, of a foreclosure; and yet this consideration was dwelt upon in the argument as of much im *352 portance. If a stranger had made the purchase here, instead of the respondent, I think there would have been no difficulty in this part of the case. A purchase by a stranger does [ *431 ] not of itself subject him personally to a liability to pay the mortgage debt. That is an independent matter. If he pays to the auctioneer the amount which he has bid for the property, he may keep or abandon his purchase as he pleases. He may discover that the property is not worth redeeming and let it alone, or he may go forward and pay the incumbrances and retain it. And in the present, case, Winchester would not lose any security which he had in the note in question, whatever course he shouTd take with regard to redeeming or abandoning the property. Stebbins v. Hall, 29 Barb., 533.
.The other question, what is the effect of the purchase under the notice given at the sale, that the property would be sold “ subject to all the debts and liabilities mentioned in the mortgages to Gaston and Winchester,” is a much more serious one, and the one which doubtless more than any other led the superior court to hold' the note in question to be extinguished by the purchase.
But what is there here besides a mere purchase—an acquisition of an equity of redemption ? Had the purchase been made by a stranger, it is too obvious to admit of argument, that he would not have become personally liable to pay the mortgage debts. He must have done something more. He must have assumed them as his own. But what evidence is there of any assumption by Winchester ? Had not the debt in question belonged to him this claim could not stand for a moment. And does this circumstance make any difference ? We think not. The fact that, at the time of the sale, the assignee made the announcement mentioned, only shows that he took that occasion to make known to the buyers that the property was under mortgages to Gaston and Winchester. That declaration did not create any new obligations, nor prove, (certainly not as matter of law,) any assumption by Winchester of a single debt due from the Arms Company. If it was evidence conducing to prove an assumption it should have been weighed by the court below. Here it is worth nothing if it falls short of [ *432 ] proving, as matter of law, *that such a contract was made by the purchaser. Now, exactly what will be sufficient proof, we will not undertake to say. The point was before us in the case of Townsend v. Ward, (27 Conn., 610,) but we did not there find it necessary to decide the question. The case went off on another ground, though we did say. *353 that such an agreement might be proved ; and we intimated that where a person sells his property, under a mortgage or lien, for a gross sum, and the debt secured by the mortgage or lien is deducted from the purchase money, slight evidence would be sufficient to prove that the purchaser had taken upon himself to pay the debt, and that it might be a proper legal inference from the facts that he had at least agreed to save his vendor from any injury therefrom. Regularly such an agreement should be in writing. It would be better still if the old note and mortgage were cancelled, and new ones, executed by the purchaser, substituted in their place. In England professional conveyancers require covenants of indemnity in such cases, as we learn from Littledale, J., in the case of Burnet v. Linch, (5 Barn. & Cress., 589,) and from Denman, C. J., in that of Wolveridge v. Steward. (3 M. & Scott, 561.) See also Stebbins v. Hall, before cited.
I have carefully examined the cases cited on the trial by the petitioner’s counsel, and I find none among them, not a single one, if I mistake not, which goes so far as to hold that a person becomes liable himself as the debtor, for mortgage debts, by merely purchasing the equity of redemption at a public sale. Besides, every case of such personal liability proceeds upon the idea that it is only from the peculiar circumstances of the case that such an agreement may be inferred.
It was said on the argument that since Winchester gave $700, for the equity of redemption, it is to be regarded as certain that the property exceeded in value the debt of $35,724 by that sum. This would not follow, in our judgment, as a conclusion of law, and Winchester insists that it proves nothing in point of fact, for he says that he paid that sum, not because the equity was of that value, or of any *value whatever, [ *433 j but because he was advised by counsel that it was the cheapest and most sure way of perfecting his title to sundry patents for machinery, which he held under the mortgages, and which constituted a considerable part of his entire security. How this point is we can not say. We do not hold it as settling the question of fact, and that is a sufficient answer to this claim.
There is manifest error in the judgment complained of.
In this opinion the other judges concurred.
Judgment reversed.