## THE HARTFORD & NEW YORK TRANSPORTATION COMPANY *vs.* THE FIRST NATIONAL BANK OF HARTFORD AND ANOTHER.

A mortgage made to an endorser by the maker of a note merely to secure the endorser, may be discharged by the latter at his pleasure; but where it is agreed that the endorser shall hold the mortgage not only for his own security but for the security of the creditor, a conveyance of the mortgaged property to a party who knew of the agreement will not defeat the equitable rights of the creditor.

Where a creditor of an insolvent had, with other creditors, signed an agreement to accept twenty-five per cent. upon their claims, the amount of the creditor's claim being stated in connection with his signature, it was held that, in the absence of any proof of fraud on the other creditors, a receipt afterwards given by the creditor for his percentage, and also parol evidence, were admissible to show that the amount for which the creditor signed the composition was that of his unsecured claims, and that the agreement was not intended to apply to another secured claim.

BILL IN EQUITY for an injunction against the prosecution of an action at law, and for the cancellation of a mortgage; brought to the Superior Court in Hartford County, and heard before *Hitchcock, J.* Facts found and bill dismissed, and motion in error by the petitioners. The case is sufficiently stated in the opinion.

*S. L. Warner*, for the plaintiffs in error.

*H. C. Robinson*, for the defendants in error.

PARDEE, J. In April, 1876, the respondent bank discounted Elizur Smith's note for $2,000, payable at bank four months from date to the order of and indorsed by William C. Smith; this was done at the maker's request, upon and because of his agreement to secure the note and all renewals thereof to the bank, by mortgaging to W. C. Smith nine-sixteenths of a steamer named "E. B. Grubb," enrolled at the port of Middletown in this state. On April 22d, 1876, Elizur Smith made the mortgage, had it recorded, and with the assent of W. C. Smith delivered it to the bank; and it was received by the latter as being a compliance with the agree-

ment that the note and all renewals should thereby be secured to it.

The note, not being paid at maturity, was five times renewed at intervals of four months; and in January, 1877, the maker became bankrupt.

On February 27th, 1877, the owners of this steamer, together with the owners of several other steamers, formed the petitioning joint stock corporation, putting in their respective vessels as capital stock at an appraised value, under a provision that no certificate of stock should be issued and no dividend be paid to the owners of any vessel having an incumbrance thereon. All of the petitioners' stockholders knew of the existence of the mortgage upon the Grubb, and therefore no certificate of stock was issued to her owners on her account.

The bank had no knowledge of the existence of this corporation until a considerable period of time from its formation had elapsed.

In August, 1877, the bank pressed for payment of the note; in consideration of further time then given, the Smiths offered and the bank accepted one hundred and ten shares of stock in the petitioning corporation as additional security. Both parties requested the petitioners to transfer the shares to the bank, but they refused on account of the mortgage upon the Grubb. Thereupon W. C. Smith executed and delivered a power of attorney to the bank to sell and transfer the shares, a certified copy of which was by the bank delivered to the petitioners. Subsequently the transfer clerk of the petitioners made the following entry upon their transfer book:—"Transferred by power of attorney to First National Bank, Sep. 1st, 1877;" and the following entry upon an unissued certificate of stock:—"Transferred to First National Bank by power of attorney Sep. 1st, 1877, by Wm. C. Smith;" and debited the shares to the latter and credited them to the bank; but of these entries the bank had no knowledge until the trial of this case.

From the business the petitioners had prior to January, 1878, credited ten per cent. upon the stock so held by the bank as security in addition to the mortgage.

The petitioners sold the Grubb to James H. Butler in January, 1878, and put the avails of the sale into their general fund. The purchaser removed the vessel to New York.

On February 13th, 1878, the president of the respondent bank was present at the annual meeting of the stockholders of the petitioning corporation, voting by virtue of a power from W. C. Smith.

Knowledge of the sale of the steamer to Butler came to the bank in June, 1878; in that month it procured from W. C. Smith a power to take possession of the vessel for the protection of his interest and its own; and through one Birnie did take such possession in August, 1878, under the mortgage. In the night of August 17th, 1878, the petitioners surreptitiously took the vessel from the possession of Birnie and brought it to Hartford in this state. The bank brought an action of trover in New York; thereupon the petitioners brought the present petition to the Superior Court for Hartford County, asking for an injunction restraining the bank from prosecuting that suit, for a decree compelling it to cancel the mortgage, and for an order that W. C. Smith shall specifically perform an agreement.

Upon the trial the petitioners offered and the court received in evidence, against the objection of the respondents, the following writing:—"For the consideration of one dollar received to the satisfaction of each of us from the other, and of our mutual agreements herein contained, we, the undersigned, creditors of Elizur Smith of Hartford, Conn., do hereby agree to accept in full satisfaction of our several claims against the said Elizur Smith the sum of twenty-five per centum; to wit, twenty-five cents upon each dollar of our several claims; said twenty-five per centum to be paid in cash on or before the 21st day of March, 1877. Dated at Hartford this third day of February, A. D., 1877." This writing was signed by the bank in form as follows:—"E. H. Crosby, Prest., for the First National Bank, $7,190.96." It was also signed by other creditors. The petitioners claiming that thereby the $2,000 note secured by the mortgage had been discharged, the respondent bank offered and the court

received in evidence, against the petitioners' objection, the following writing:—"Received, Hartford, March 20th, 1877, from Elizur Smith twenty-five per centum of the following named notes in payment in full of all claims against him on said notes, not intending hereby to release joint debts, to wit: H. R. Hills, $380; H. & S. Bissell, $1,100; Chas. Doherty, $691.49; C. B. Penfield, $175; M. R. Brazos, $540; Addison Safford, $100; G. A. Hume, $75; C. S. Seymour, $642; Robert Carnes, $100; H. Hammond & Co., $170.50; notes of E. Smith, indorsed by M. R. Brazos, $300; demand note of Elizur Smith, no indorser, $1,500; in all amounting to $6,880.96; and we hereby agree, in case any or all of the above named notes are paid in full, to refund to said Elizur Smith the amount paid by him on such notes, or in other words twenty-five per cent. of such notes as may be paid in full to us by the makers.    *    *    Received as above seventeen hundred and twenty $\frac{24}{100}$ dollars." (Signed) "First National Bank of Hartford, E. H. Crosby, President."

The respondents also offered and the court received, against the objection of the petitioners, the testimony of Elizur Smith, who testified that the agreement had reference to the unsecured claims only, and did not in fact or intent include the secured note of $2,000.

The court having heard the parties denied the prayer of the petition and dismissed it.   The petitioners filed motions for a new trial and in error, assigning for error that the court did not decide that as a matter of law W. C. Smith had the right to discharge the mortgage, and that the transaction of sale as disclosed on the record was a discharge thereof; also, that the court did not decide that the respondents were estopped from claiming the stock and the interest under the mortgage at the same time; also, that the bank was not by reason of the presence of its president at the meeting of the petitioners' shareholders bound to make known his claim that the sale of the vessel by the Smiths to the petitioners was a wrongful one; also that the court did not order the bank either to reconvey the stock or cancel the mortgage.

There are really very few legal questions involved in the

case, the finding of facts disposing of some of the principal ones discussed.

The import of the finding is, that at the time of the organization of the petitioning corporation every stockholder therein had knowledge that the Grubb was under mortgage to W. C. Smith, not for his individual protection merely, but to him in a fiduciary capacity for the respondent bank; that the mortgage, although to him in name and form, was in fact, in the understanding and by the agreement of all parties thereto, to, and for the security of, the bank.   This fact distinguishes the case from *Thrall* v. *Spencer*, 16 Conn., 139, and from *Jones* v. *Quinnipiac Bank*, 29 Conn., 37.   In these cases the mortgages were obtained by agreement with and for the security of the endorsers solely; a security which they could surrender at pleasure, as they had not by any special agreement admitted the holders of their endorsements to any equitable interest restricting them in the matter.   W. C. Smith had accepted the mortgage as a trust for the bank, to continue as long as the note in itself, or in any one of the successive renewals thereof, remained unpaid; and this to the knowledge of the petitioning stockholders; therefore whatever interest they took was and remains subject to such trust and knowledge.

Moreover, at the organization of the petitioning corporation Elizur Smith owned the right to redeem the Grubb from the mortgage, and W. C. Smith was mortgagee in name, in reality in trust for the bank; these precise rights to and interests in the vessel, and no other or greater, were what they contributed to the petitioners' capital stock, and this to the knowledge of all the other stockholders.   Because of this fact and knowledge the petitioners refused to issue to Elizur Smith or any one else any certificate of shareholding; refused to make to any one any admission that his ownership of stock was not qualified and diminished to the precise extent to which his ownership of the vessel remained incumbered; thereby intentionally protecting themselves against the mortgage.   It is true that in June, 1877, the petitioners made an entry of transfer of the shares from Elizur to W. C. Smith, and in

September following an entry of transfer from the latter to the bank, still refusing to issue any certificate because of the mortgage. The bank was ignorant of the transfer to itself; and it does not appear that the Smiths or the petitioners believed any of these entries of transfer or of debit or credit of shares, affected or were intended to affect any greater right or interest in them than the possible value therein after . payment of the mortgage. Nor does it appear that when the petitioners sold the vessel they supposed they had obtained an unincumbered ownership thereof; or that W. C. Smith ever agreed to accept of the various entries in reference to the shares as a substitute for his mortgage. Indeed the petitioners aver in their petition that they agreed with the Smiths to pay the debt to the bank as a condition precedent to entire ownership of the vessel.

From their business prior to January, 1878, the petitioners credited ten per cent. to this stock. Having reserved the right to withhold all dividends upon it until the removal of the incumbrance, the credit was voluntary and with knowledge, and estops neither the Smiths nor the bank.

The petitioners insist that from the time when the president of the bank was present, and voted upon a power from W. C. Smith at the annual meeting of the petitioners' stockholders, the law imputes knowledge to the bank of all previous transactions of the petitioners; and that the omission on the part of the bank then to claim that the sale of the steamer by the Smiths to the corporation was not a rightful one, is in law a confirmation thereof and now estops it from denying the petitioners' right to sell.

But this whole matter is disposed of by the finding. It is found that the president had in fact no knowledge of such sale, and there is no finding that his ignorance in that regard was in any degree culpable; none that he was wilfully silent with the intent to mislead; none that his omission to act or speak in reference to the sale induced the petitioners to act or refrain from action. There is here no element of an estoppel. In *Danforth* v. *Adams*, 29 Conn., 107, the marginal note is as follows:—"Where a person through misapprehension, igno-

rance or inadvertence does acts or makes declarations that mislead another to his injury, but where at the same time there is no willful deception or culpable negligence, and no intention that the representation should be acted on as true by the other party, and nothing that is equivalent to a promise that the representation is true, the person making the declarations or doing the acts is not estopped from proving the truth against the party thus misled."

The shares were pledged as additional security; they were received of course subject to any superior legal or equitable right of the petitioners therein; but the bank is entitled to hold whatever interest it obtained until payment of its claim; and until then is not to be subjected to any order to reconvey.

As to the motion for a new trial. The composition deed and the signature of the bank thereto, taken together, are to be interpreted as an agreement by the bank to accept a part for the whole upon claims amounting to $7,190.96, and the bank is not here to be held as having perpetrated a fraud upon other creditors, in the absence of proof that any one of them signed the deed without knowledge that the bank had excluded its secured claim. The deed must have therefore for the petitioners the meaning which it had for those who made it. The receipt reciting the notes making up the aggregate sum, framed in reference and as the complement to the deed, and the testimony of Elizur Smith, were admissible, not for the purpose of contradicting the writing, but for the removal of the doubt raised by the petitioners as to the items composing that sum.

There is no error, and a new trial is not advised.

In this opinion the other judges concurred.