*Amasa M. Eaton*, for plaintiff.
*Edwin Metcalf*, for defendant.

---

CHRISTOPHER A. HALL *et ux. vs.* CHARLES A. WESTCOTT *et als.*

A. and B. entered into a contract for the sale of a lot of land, No. 11. By mutual error A. gave B. a deed of lot No. 12, and B. mortgaged the lot to C.

*Held*, that the legal title passed by A.'s deed, which could only be impeached by A., or some one claiming under him.

B. mortgaged to C. land in the adverse possession of A.

*Held*, that the mortgage was good in equity as between B. and C.

A mortgagee, whether in possession or out of possession, cannot purchase the mortgaged estate at a tax sale, and hold it under the tax title as against the mortgagor or other mortgagees.

A bill in equity to redeem was brought against a mortgagee who had been in possession six and one half years.

*Held*, that the lapse of time did not bar the suit.

BILL IN EQUITY to redeem a mortgage and for an account.
*Edward D. Bassett & Frederic Hayes*, for complainants.
*George B. Barrows, Charles H. Page*, and *Franklin P. Owen*, for respondents.

The respondents claim that the right of redemption is barred

because, although holding the first mortgage by assignment, but not being in possession of the premises, he bought the title to the estate at a tax sale, July 24, 1877, under which title he entered and held the premises. 1 Jones on Mortgages §§ 711–713 ; *Blythe* v. *Richards,* 10 Serg. & R. 261 ; *Walthall* v. *Rives, Battle & Co.* 34 Ala. 91 ; *Harrison* v. *Roberts,* 6 Fla. 711 ; *Trimm* v. *Marsh,* 54 N. Y. 599 ; *Williams* v. *Townsend,* 31 N. Y. 411 ; *Waterson* v. *Devoe,* 18 Kans. 223 ; *Ten Eyck* v. *Craig,* 62 N. Y. 406 ; *Chapman* v. *Mull,* 7 Ired. Eq. 292 ; *Cholmondeley* v. *Clinton,* 2 Jac. & W. 1, 183 ; *Anson* v. *Anson,* 20 Iowa, 55 ; *Bowman* v. *Cockrill,* 6 Kans. 311 ; *Lybrand* v. *Haney,* 31 Wisc. 230 ; *Curtis* v. *Smith,* 42 Iowa, 665 ; *Kelsey* v. *Abbott,* 13 Cal. 609 ; *Moss* v. *Shear,* 25 Cal. 38 ; *Smith* v. *Lewis,* 20 Wisc. 369 ; *Sturdevant* v. *Mather,* Ib. 606 ; *Jones* v. *Davis,* 24 Wisc. 229.

Blackwell on Tax Titles, 399, to the contrary, is not sustained by the authority cited, viz., *McLaughlin* v. *Green,* 48 Miss. 175.

*Fisk* v. *Brunette,* 30 Wisc. 102 ; *Chickering* v. *Failes,* 26 Ill. 507, and *Moore* v. *Titman,* 44 Ill. 367, cited in Cooley on Taxation, 347, 348, are not opposed to the doctrine that a mortgagee not in possession may purchase at a tax sale and set up the title against the mortgagor.

The only authority to the contrary we have found is *Conn. Mutual Life Ins. Co.* v. *Bulte,* 45 Mich. 113, in which it is held that a purchase by the mortgagee at a tax sale operates as a mere payment *ipso facto,* if the owner or other mortgagee so elects to treat it, on the ground that the mortgagee, equally with the owner or other mortgagee, owes to the state the duty to pay the tax. But if the owner does not elect so to treat the purchase, then it remains a purchase and not payment. *Maxfield* v. *Willey,* 46 Mich. 252.

We submit, however, that, in the absence of a statute specifically creating the duty, the mortgagee is under no obligation to the state to pay the tax. The duty is upon him alone who is assessed as the owner or occupant, according as the statute may prescribe. The doctrine of the Michigan case is simply this : that the mortgagor has the amazing privilege of compelling the mortgagee to lend more money, or lose his security altogether. See *Waterson* v. *Devoe,* 18 Kans. 223.

Furthermore, the complainants are not entitled to redeem, because Mrs. Hall has no title, all the deeds under which she claims title having been made while Currey was in adverse possession of the land, and hence being void. 3 Washburn on Real Property, 3d ed. 293 ; *Bunce* v. *Gallagher*, 5 Blatch. 481 ; *Campbell* v. *Point Street Iron Works*, 12 R. I. 452 ; *Burdick* v. *Burdick*, 14 R. I. 574.

Lest it be claimed that, by virtue of the declaration of trust, the defendant was precluded from acquiring and setting up the tax title for his own benefit, and that the same with the rents and profits of the estate enure to the benefit of Mrs. Hall, we submit, —

1. That the rules which relate to the disabilities of trustees from acquiring interests adverse to their *cestuis*, impeaching the titles. of their *cestuis*, and the like, apply only to those cases which come within the reason of the rules. Perry on Trusts, § 199, and notes.

2. These rules have their origin in, and application to, cases where there has been or is not only a *subject-matter* to which the trusts can attach, but an actual possession or control of, or dominion over, that subject-matter, or a title by which that possession, control, or dominion can be acquired. The very definition of a trust involves these things. Perry on Trusts, § 2 ; 2 Story Eq. Juris. § 964.

3. The rule that a trustee cannot set up a title adverse to his *cestui que trust* rests upon the ground of estoppel. It is said that, having come into possession of the property under a particular title, or through a confidence reposed in him, the trustee cannot impeach that title.

The estoppel arises from the *possession*, and not from the instrument creating the trust. And it is conceded that, if he first delivers up possession, he may then assert his own title. From this it would seem to follow that, if he never had possession, or what is equivalent thereto, according to the nature of the property, and *à fortiori* if he had neither title nor possession, he might acquire and assert an adverse title. Bigelow on Estoppel, cap. 14, cap. 15 ; *Attorney General* v. *Munroe*, 2 De G. & Sm. 122, 163 ; *Stone* v. *Godfrey*, 5 De G., M. & G. 76, 86 ; *Newsome* v. *Flowers*, 30 Beav. 461 ; *Price's Heirs* v. *Evans*, 26 Mo. 30.

*July* 24, 1886. DURFEE, C. J. The bill states that on October 23, 1873, Walter J. Reynolds, being the owner of a lot in Providence, mortgaged it for $800 to Stephen H. Williams; that subsequently the lot passed by mesne conveyances to Charles W. Adams, who, December 30, 1874, gave two mortgages thereon to Hiram C. Pierce, to wit, one for $3,250, and one for $500, subject to the mortgage for $3,250; that the mortgage for $3,250, though taken solely in Pierce's name, belonged equally to him and the complainant Harriet Hall; that Pierce assigned the mortgage for $3,250 to the defendant Charles A. Westcott, who thereupon, January 23, 1875, gave the complainant Harriet Hall a writing in which he declared that he held said mortgage as to one half in trust for her; that said Pierce subsequently assigned said mortgage for $500, and his interest in said mortgage for $3,250 to said Harriet, and that said mortgage for $500 contained a power of sale under which, in January, 1882, said Harriet duly sold the estate, buying it herself under notice as authorized by statute. The bill alleges that the defendant is in possession, and contains other allegations. It asks for an account and for leave to redeem. The defendant sets up several defences.

The first defence is that previous to October 23, 1873, the lot in suit belonged to one Samuel G. Currey; that it was platted as lot 11 on a plat of house-lots, and adjoined lot 12 on the plat, also belonging to Currey; that lot 11 had been built upon, and lot 12 was vacant; that Currey contracted to sell lot 12 to Reynolds, and by mistake conveyed to him lot 11 instead of lot 12; that neither Currey nor Reynolds knew of the mistake at that time, but that subsequently Currey discovered the mistake and applied to Reynolds to rectify it, and that then Reynolds and the complainant Christopher A. Hall, Charles W. Adams, Hiram C. Pierce, and one Horatio N. Burdick, with full knowledge of the mistake, colluded together to defraud Currey by means of the deeds and mortgages above mentioned, the complainant Christopher A. Hall using the name of his wife Harriet instead of his own. We do not think the defence can avail the defendant. Currey's deed to Reynolds was not wholly void; it passed the legal title to Reynolds, and, if Currey did not choose to have it set aside, no one but him, or some one claiming under him, can impeach it on account of the fraud or mistake.

The second defence is that, at the time the two mortgages under which the complainant claims title were executed, Currey was in possession of the mortgaged lot, *i. e.* lot 11, holding it adversely, and had been so in possession ever since his conveyance to Reynolds, and that consequently the mortgages were void. We do not think this defence is tenable. The mortgages were ineffectual to pass any title which could be enforced at law against Currey or any person holding under him, but they were good in equity between the parties to them. 3 Washburn Real Property, 3d ed. *597; *Edwards* v. *Roys*, 18 Vt. 473; *Livingston* v. *Peru Iron Co.* 9 Wend. 511, 523; *Wade* v. *Lindsey*, 6 Metc. 407; *Stockton* v. *Williams*, 1 Doug. Mich. 546; *Betsey* v. *Torrance*, 34 Miss. 132, 138; *University of Vermont* v. *Joslyn*, 21 Vt. 52, 61. The court say, in the last named case: " The conveyance is only void as to the person holding adversely and those who subsequently come in under him; as to all others the conveyance is valid, and passes the title or interest from the grantor or lessor to the grantee or lessee." We think this doctrine is certainly true in equity.

The third defence is that the mortgaged lot was sold for the non-payment of taxes, and bought by and conveyed to the defendant. This raises the question whether a mortgagee or his assignee, out of possession, can become a purchaser at a tax sale with the same effect, as against the mortgagor and other mortgagees, as if he were a stranger to the estate. There is some conflict of authority on this point. All the cases agree that there are persons who stand in such relations to the estate that they cannot purchase as if they were strangers. No person whose duty it is to pay the tax can be permitted to purchase at a sale for its non-payment, and acquire a good title as against others who are interested in the estate, since to permit him to do so would be to permit him to profit by his own default. Under this rule mortgagors, mortgagees in possession, life tenants, and tenants obligated by contract to pay the taxes, are incapacitated to become purchasers. The incapacity has likewise been held to extend to tenants in common, for, if the estate is sold for taxes to one of the tenants, it is sold for his default as well as for the default of his co-tenants. *Page* v. *Webster*, 8 Mich. 263; *Butler* v. *Porter*, 13

Mich. 292; *Cooley* v. *Waterman*, 16 Mich. 366; Cooley on Taxation, 346, 347. So a person who occupies a fiduciary relation as regards the estate, cannot purchase it for himself. The trust in the one half of the mortgage for $3,250 is protected under this rule. And there are cases which enounce, or at least presuppose, a still broader doctrine, which may be stated thus, namely : that a purchaser who has an interest in the estate, such as would entitle him to redeem it if sold to another, will be presumed to have purchased it for the protection of that interest, or to save it from sacrifice, and will be required to hold it, even after the statutory period for redemption has expired, simply as security for his reimbursement. We find this doctrine nowhere more clearly asserted than in *Fair* v. *Brown*, 40 Iowa, 209. The defendant there was interested in the estate by judgment lien and as a second mortgagee. He bought certificates of sale for taxes, and subsequently took the tax deed. The court held that the prior mortgage was not defeated. " The land," says the court, " is a common fund for the payment of the plaintiff's," *i. e.* the prior mortgagee's, " mortgage and the defendant's liens. Defendant was authorized to redeem from the tax sale. Equity will not permit him to acquire the title for an inconsiderable sum when he was authorized to remove the trifling incumbrance by redemption. Though not bound to pay the tax, yet it was his right to do so to protect his liens. He cannot obtain that protection by pursuing a course that will deprive the mortgagee of his security, and leave the mortgagor to sustain the weight of the liens, which are personal judgments, after being deprived of his property by tax title." *Garrettson* v. *Scofield*, 44 Iowa, 35 ; *Porter* v. *Lafferty*, 33 Iowa, 254 ; *Stears* v. *Hollenbeck*, 38, Iowa, 550. In *Middletown Savings Bank* v. *Bacharach*, 46 Conn. 571, the defendant, having had an undivided eighth of an estate subject to a mortgage set out to him under an execution, purchased the estate at a sale for taxes assessed before he became interested in it, and the court held that he could not set up the tax title to defeat the mortgage, he being entitled to redeem the mortgage, which yet he could not do, if the mortgagee had paid the taxes, without reimbursing him. The court also said that the mortgagee was similarly incapacitated, because he could pay the tax and add the amount of it to the

mortgage debt. In *Connecticut Mut. Life Ins. Co.* v. *Bulte*, 45 Mich. 113, the court lays down the doctrine that where a mortgagee, or one of two or more mortgagees, purchases the estate at a tax sale, the purchase may be treated as payment. " It is as just and as politic here," says the court, " as it is in the case of tenants in common, to hold that the purchase is a payment of the tax." In the later case of *Maxfield* v. *Willey*, 46 Mich. 252, the court affirms the doctrine. " When the mortgagee," says the court, " instead of making payment of the taxes, makes a purchase of the land at tax sale, we have no doubt of the right of the mortgagor to have the purchase treated as a payment, and to compel the cancelment of the certificate or deed on refunding the amount paid with interest." The opinions in these cases were delivered by Judge Cooley, who, in the preparation of his book on Taxation, had occasion to make the subject a special study.

The most recent case which we have met with is *Woodbury* v. *Swan*, 59 N. H. 22, in which the Supreme Court of New Hampshire decided that the holder of a mortgage cannot defeat a prior mortgage by acquiring a tax title. The court rest their decision on the following reasons, as declared by Bingham, J., in delivering the opinion of the court : " Mortgagor and mortgagee have a unity of legal interest in the protection of their titles against sale for the non-payment of taxes, and against outstanding tax titles ; and it is not equitable that either of them should act adversely to the other in the acquisition and use of such titles. Therefore the mortgage contract comprises an implied agreement that, while either party may buy a tax title for the preservation of his right in the mortgaged property, neither of them will buy a tax title for the extinguishment of the title, in the maintenance of which they, as well as partners and tenants in common, are in law jointly concerned. The common interest of these parties in the mortgaged property creates a relation of trust and confidence."

Other cases may be cited which support the same view, though not always for the same reasons. *Moore* v. *Titman*, 44 Ill. 367 ; *Harkreader* v. *Clayton*, 56 Miss. 383 ; *Haskell* v. *Putnam*, 42 Me. 244 ; *Bassett* v. *Welch*, 22 Wisc. 175 ; *Whitney* v. *Gunderson*, 31 Wisc. 359, 379 ; *Chickering* v. *Failes*, 26 Ill. 507 ; *McLaughlin* v. *Green*, 48 Miss. 175. In California it is held that a person

who is under any obligation, either *moral* or *legal*, to pay the taxes, cannot become a purchaser.   *Moss* v. *Shear*, 25 Cal. 38 ;  *Christy* v. *Fisher*, 58 Cal. 256.

Other cases adopt a narrower view, and maintain that any person can become a purchaser who is not under any legal duty to pay the taxes.   *Williams* v. *Townsend*, 31 N. Y. 411 ;  *Waterson* v. *Devoe*, 18 Kans. 223 ;  *Bettison* v. *Budd*, 17 Ark. 546 ;  *Ferguson* v. *Etter*, 21 Ark. 160.

Our conclusion is that a mortgagee, either in possession or out of possession, is not entitled to purchase the estate at a tax sale, and set up the tax title as against the mortgagor or the other mortgagees.   They all have a common interest in the preservation of the estate, and therefore, if either of them purchases the estate at a tax sale, it should be presumed in favor of the others that he made the purchase for the common protection.

The fourth defence is that the complainants have been guilty of *laches* in not sooner bringing the suit or pressing their claim. We do not think there have been *laches* sufficient to bar the suit. The defendant had only been in possession of the mortgaged premises about six and one half years when the suit was begun.

We think a case is shown which entitles the complainants to relief.